487 A.2d 16

**Betty LEWIS, Appellant,**

v.

**John L. PRUITT.**

Superior Court of Pennsylvania.

Argued Aug. 16, 1984.

Filed Jan. 4, 1985.

William B. Anstine, Jr., York, for appellant.

Patricia A. Butler, York, for appellee.

Before WICKERSHAM, JOHNSON and WATKINS, JJ.

JOHNSON, Judge:

At the conclusion of a four-day trial, the jury awarded damages to plaintiff, Betty Lewis, of $110,000 in economic loss and $140,000 in non-economic loss. The trial court molded the verdict by deducting $15,000 from the verdict on economic loss. The deduction represented the possible wage loss benefits collectible by plaintiff from her no-fault insurance carrier.

Both parties filed post-trial motions. Plaintiff contended that she was entitled to counsel fees and costs in connection with a pretrial request for admissions. She further excepted to the court's refusal to permit the recovery of punitive damages, as well as the deduction of $15,000 work loss benefits from her $110,000 award for economic loss. De-

fendant, John L. Pruitt, sought a new trial based upon the alleged excessiveness of the verdict and the admission into evidence of earnings of beauticians to determine plaintiff's earning capacity. Defendant also resisted the award of delay damages.

The trial court dismissed the exceptions of both parties, granted delay damages on the verdict as molded by the court, and directed the entry of judgment on the modified verdict. Both parties now appeal from the judgment as entered. We reverse so much of the trial court's order as sought to reduce the award for economic loss, affirm the balance, and remand for entry of judgment consistent with this opinion.

## I. BACKGROUND

This case arose out of a two car, head-on collision which occurred on May 22, 1981. The defendant had been rendered unconscious by vehicle exhaust fumes which had collected in his unventilated car. His car crossed the center line and struck plaintiff's car in her lane of travel. Plaintiff suffered a traumatic cervical syndrome and other injuries. Prior to the accident, plaintiff had been employed as a bundle work binder at a dress manufacturing plant in York, Pennsylvania for some seventeen years. Prior to that she had been a beautician.

## II. DISCOVERY SANCTIONS

Prior to trial, plaintiff had requested the admission of certain facts regarding the salary range for beauticians in the York County area. The request was in the form of an undated, handwritten statement by one Mae Van Tassel, which in its entirety set forth the following:

Mae Van Beauty Salon
20 N. Harrison Street
York, PA 17403
8432941

Having been a beautician and employer for 38 years I am familiar with payment in wages in the average Beauty Salon in the last five years in this area listed as follows.

Starting saleries [sic] are the minimum wage scale.

After about one year the average operator is paid by Commission only, which consists of 50% of all services performed. There are instances when 40% is payed [sic] and also 60%, however, the operator is then charged for some supplies. So I conclude in a 40 hour week with a full scedual [sic] of customers an operator can earn $200. to $300. weekly.

Mae Van Tassel

The defendant responded to the request by filing an objection thereto, pursuant to Pa.R.C.P. 4019(d)(3), on the basis that the statements of Mae Van Tassel "are not matters that relate to statements or opinion of fact or of the application of law to fact."

Pa.R.C.P. 4019(d) vests in the trial court authority to tax as costs the reasonable expenses of making proof on matters not previously admitted, unless the court finds that "the party failing to admit had reasonable ground to believe that he might prevail on the matter." The trial court, in its Opinion filed in disposing of post trial motions, found that the defendant had a reasonable belief that he did not have to admit the truth of the statement. The court noted its midtrial ruling that the statement itself was inadmissible without more expert testimony on plaintiff's aptitude and skills.

 The imposition of specific sanctions for failure to obey a discovery order is largely within the discretion of the court. *Brunetti v. Southeastern Pennsylvania Transportation Authority*, 329 Pa.Super. 477, 478 A.2d 889 (1984). We are not inclined to disturb the trial court's finding regarding the respondent-defendant's reasonable belief given the difficulty encountered by the plaintiff in securing the ultimate admission of the testimony. We affirm that por-

tion of the court's order refusing fees and costs in connection with the request for admissions.

## III. PUNITIVE DAMAGES

Prior to trial, plaintiff sought leave to amend her complaint to include a paragraph for punitive damages based on defendant's alleged "outrageous conduct." Leave to amend was denied, the trial court relying on this court's decision in *Reimer v. Delisio*, 296 Pa.Super. 205, 442 A.2d 731 (1982), *aff'd*, 501 Pa. 662, 462 A.2d 1308 (1983). In *Reimer*, we held that a trial judge does not commit error in refusing to permit a jury to consider punitive damages based upon arguably reckless conduct where the action arises under the No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. (Supp.1984).

Plaintiff nevertheless contends on this appeal that she should have been permitted to amend her complaint in pursuit of punitive damages inasmuch as an individual remains liable for intentionally injuring himself or another individual. 40 P.S. § 1009.301(a)(3). In *Teagle v. Hart*, 279 Pa.Super. 487, 421 A.2d 304 (1980), we adopted the definition of "intentionally" as it appears in Section 208(b)(1) of the No-fault Act for the purpose of determining whether a party remains liable in tort under Section 301(a)(3).

Section 208(b)(1) provides, in pertinent part:

An individual intentionally injures himself or another individual if he acts or fails to act for the purpose of causing such injury or with knowledge that such injury is substantially certain to follow. An individual does not intentionally injure himself or another individual:

(A) merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury; ...

We can readily agree with plaintiff's argument that the defendant knew that carbon monoxide fumes were entering the passenger compartment of his vehicle and that defendant knew the fumes were making him lose consciousness. We also agree that the testimony at trial would support a

finding that defendant nevertheless rolled up his window, thereby allowing the fumes to accumulate. After a review of both the amended complaint and the trial transcript, we reject plaintiff's contention that "the defendant was 'substantially certain' that if he was unconscious, his automobile would strike another automobile causing injuries to individuals such as the plaintiff and his passengers." Brief for Appellant at 14.

The defendant testified only as part of the plaintiff's case in chief, as on cross-examination. The only relevant testimony as to defendant's state of mind on this issue occurred as follows:

Q. So you continued driving on down to York even though you knew the fumes were having an effect on you?

A. I figured I could make it home.

Q. Did you have to be in York at any special time that morning?

A. No.

Q. And you found that you had to keep the windows open to drive because you were effected [sic] by the fumes?

A. Yeah.

Q. From your past experience, you knew that inhaling such fumes as this can effect [sic] your ability to do things and make you drowsy?

A. I guess so.

Q. And knowing all this, when you got near York, you put your windows up and continued driving?

A. I put my windows up and down all morning, but I put my windows up because me and Kenneth both got cold. It was cold.

Q. So as you got to York, you put the windows up?

A. Yeah, because I figured I could make it right over the hill. That's all I had to do, was go over the hill.

Q. The next thing you knew, you heard a horn and you were on the other side of the road?

A. [Witness nodding in the affirmative.]

Notes of Testimony, Vol. I., February 15–16, 1983, at 79–80.

A review of the proposed Amended Complaint reveals that the only additions sought to be included were as follows:

7.

. . . .

(D) The defendant operated his vehicle knowing it to be defective in that he knew his vehicle to have a leak in its exhaust system which caused exhaust fumes to enter the passenger copartment [sic], causing him to become intoxicated or otherwise to impair his ability to operate his vehicle.

(E) The defendant operated his vehicle while intoxicated and otherwise impaired, from exhaust fumes which he knew to be entering his vehicle.

. . . .

15.

The defendant, Pruitt's, conduct was outrageous, wilfull [sic], intentional and done with malicious or reckless disregard for the rights of the plaintiff, Betty J. Lewis.

WHEREFORE, the plaintiff asks this Honorable Court to grant judgment of compensatory and punitive damages against the defendant with interest and costs in excess of Ten Thousand Dollars ($10,000.00).

■ Applying the definition of "intentionally" as found in Section 208(b)(1) of the No-fault Act, we have no difficulty in concluding that the act of the defendant in continuing on his journey and in rolling up his window was *not* done either for the purpose of causing the plaintiff's injuries or with knowledge that the plaintiff's injuries were substantially certain to follow. Neither the averments in the complaint nor the evidence introduced at trial would support such a conclusion. Accordingly, we affirm that portion of the court's order dismissing plaintiff's exceptions to the rulings of the court on this issue. Plaintiff's request for

leave to amend the complaint to pursue punitive damages was properly denied.

## IV. IMPAIRMENT OF EARNING CAPACITY

At trial, the court allowed testimony by two hair salon operators as to the earnings plaintiff could receive as a beautician. On appeal, defendant contends this was error, inasmuch as plaintiff had not been employed as a beautician for approximately sixteen years prior to the accident and no evidence of definite plans to return to work in this field had been offered. Absent such evidence, defendant urges that the testimony as to beautician's earnings was both speculative and irrelevant and, thus, inadmissible. We cannot agree.

As a general rule, questions concerning admission or exclusion of evidence are within the sound discretion of the trial court, to be reversed on appeal only for a clear abuse of discretion. *Radogna v. Hester*, 255 Pa.Super. 517, 388 A.2d 1087 (1978).

Plaintiff testified to having graduated from the Empire Beauty School in York, PA and to having received a beautician's operator's license from the state licensing board. She had worked as a beautician for approximately eleven years and maintained her own shop with the necessary equipment in her home, working thirty to forty hours a week. While employed at the dress manufacturing plant, plaintiff had maintained her operator's license, renewing it every two years. She continued to do beauty work for her friends and members of her family, while working at the dress manufacturing plant, and had even discussed reopening a beauty shop with two of her fellow workers at the plant, both of whom were also beauticians.

Defendant relies principally on *Frysinger v. Philadelphia R.T. Co.*, 249 Pa. 555, 95 A. 257 (1915) and *Wiley v. Moyer*, 339 Pa. 405, 15 A.2d 145 (1940) for the proposition that evidence of a former occupation is inadmissible to show earning capacity where there has been a break between the

former occupation and the time of the injury. We find both cases to be inapposite.

In *Frysinger*, the plaintiff had been permitted to introduce testimony as to her earnings as a professional pianist at a period some two or three years prior to the accident. In sustaining the assignment of error as to this testimony, our supreme court noted that the plaintiff had apparently abandoned the occupation, there was no evidence that she intended to resume it, no medical testimony as to her inability to teach music and, at the time of the accident, the plaintiff was "a married woman, living with her husband." 249 Pa. at 559–60, 95 A. at 258. The *Frysinger* court further noted that it did not appear from the record what the probabilities were of plaintiff's being able to secure employment at her former occupation, in case she wished to resume it. The court also observed that the trial court, in its charge to the jury, first declared that one didn't know whether the plaintiff would ever be engaged as a pianist again, and that it would be pure conjecture to consider the extent to which her condition after the accident would have an effect upon her ability to teach, but that the jury should take that into consideration in considering the impairment of plaintiff's earning capacity.

In *Wiley*, the supreme court held that the issue of the admissibility of evidence of prior employment had been waived due to the failure of defense counsel to timely object to the only portion of the evidence that was prejudicial. By way of dictum, the court stated that testimony as to plaintiff's actual earnings as a coal miner some nine years before the accident, and for a period of years prior thereto, was "too remote in point of time to be competent proof of his capacity as a wage earner when the accident occurred." 339 Pa. at 409, 15 A.2d at 146.

Unlike the *Wiley* case, the plaintiff in the present appeal introduced testimony not only of her continued licensure to perform work as a beauty operator but also of her having continued on a casual, part-time basis in performing duties as a beautician. Plaintiff also introduced evidence of the

probable compensation available to her were she to resume full-time work as of the time of trial.

The thrust of defendant's contention appears to be that a definite plan to return to work in a given occupation is a prerequisite to the introduction of evidence intended to demonstrate a loss of earning capacity in that field.

█ The test for impaired earning capacity is whether the economic horizon of the disabled person has been shortened because of the injuries sustained as a result of the tortfeasor's negligence. *Bochar v. J.B. Martin Motors*, 374 Pa. 240, 97 A.2d 813 (1953); *Janson v. Hughes*, 309 Pa.Super. 399, 455 A.2d 670 (1982); *see generally Frankel v. Todd*, 393 F.2d 435, 438–40 (3d Cir.1968), *cert. denied*, 393 U.S. 855, 89 S.Ct. 137, 21 L.Ed.2d 120 (1968). The Plaintiff presented evidence of a serious, permanent neck injury which reduced her ability to lift and bend, thereby preventing her from working at her previous jobs. Although she had returned to work at the dress manufacturing plant after the accident, her inability to perform her tasks of repetitive bending and lifting resulted in her being laid off. She further testified that she was physically unable to resume her occupation as a beautician since the pain she experienced in her shoulder and neck prevented her from lifting her arms.

█ Where, as here, the plaintiff has maintained her skills as a beautician, continued to practice her trade albeit on a part-time basis and engaged in discussions pointing towards a return to that occupation, we hold that it was not an abuse of discretion for the trial judge to submit this evidence to the jury on the issue of impairment of earning capacity.

## V. EXCESSIVENESS OF VERDICT

The jury attributed 100% of the causal negligence to the defendant and awarded plaintiff $110,000 for her economic loss and $140,000 for her non-economic loss. Defendant complains that both awards were excessive.

■ While it is true that a court can grant a new trial based on the excessiveness of the verdict, it may not lightly disregard the jury's award. The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980). Each case is to be decided according to its unique facts and circumstances. The granting or denial of a new trial on grounds of excessiveness of award is within the discretion of the trial court and will not be reversed in the absence of a clear abuse of discretion. This court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Thompson v. Anthony Crane Rental, Inc.*, 325 Pa.Super. 386, 473 A.2d 120 (1984). *Cf. Feld v. Merriam*, 314 Pa.Super. 414, 461 A.2d 225 (1983).

■ Being mindful of these guidelines, we can find no grounds for the granting of a new trial based upon the verdicts rendered in this case. The record contains ample testimony to support the jury's award. The testimony of the plaintiff, her medical experts, and her vocational rehabilitation expert was extensive with regard to plaintiff's disability and impairment of earning capacity. The plaintiff had a work life expectancy of 16.5 years to the age of seventy and, if physically able, could have earned up to $300 per week on a commission basis as a beautician.

Her chief injury was a traumatic cervical syndrome. Her neck injury is permanent, although surgery might possibly alleviate the condition. As a result of the accident, she also sustained a laceration to the lower lip when her teeth went through her lip at impact requiring surgery and resulting in a permanent scar. She suffered bruises to her hips and knees, and experienced pain in her knees, chest, neck and shoulder area, which pain continued at a reduced level at time of trial. She experiences frequent headaches and is unable to lie on her left side while in bed. She is incapable of performing heavy work and has experienced difficulty in

doing normal housework. She wore a cervical collar for some period of time. She can no longer engage in her favorite sport of bowling.

In light of this evidence, we cannot conclude that the award of $110,000 for her economic loss and $140,000 for her non-economic loss was either capricious or excessive.

## VI. MOLDING THE VERDICT

Finally, plaintiff contends that the trial court erred in molding the verdict by deducting $15,000 from the jury's award of $110,000. The amount deducted represented the possible wage loss benefits collectible by plaintiff from her no-fault carrier under Section 202(b) of the No-fault Act. Since this appeal was filed, our court has squarely decided the issue in favor of plaintiff. *Williams v. Dulaney,* 331 Pa.Super. 373, 480 A.2d 1080 (1984).

In *Williams* we held that the No-fault Act does not provide basic loss benefits for lost earning *capacity,* but only for recovery of wages actually lost. There, the evidence before the jury was clear that the plaintiff had lost wages of exactly $1,481.55, all of which had been compensated by her no-fault carrier. We reversed the order of the court deducting $15,000 from the verdict and modified the judgment to reflect a deduction in the amount of the lost wages which had been recovered. We recognized that the plaintiff had returned to work on a full-time basis and it was "unlikely that she will suffer any further actual wage loss due to the accident."

In the appeal now before us, there was no evidence submitted to the jury by either party as to plaintiff's wage loss benefits. Nor was there any attempt by defendant to prove a setoff. One week after trial, plaintiff submitted her exceptions to the court's order molding the verdict. The exceptions averred that work loss benefit payments were in the amount of $3,020. The trial court accepted that figure of actual wage loss benefit in its opinion of June 22, 1983, filed in response to plaintiff's exceptions. In her brief to this court on appeal, plaintiff concedes that the verdict should have been set off in the amount of $3,020.

We thus will vacate so much of the order of the trial court as deducted $15,000 from the award for economic loss, and modify the judgment to reflect a deduction of $3,020.

## VII. CONCLUSION

The order of the trial court dismissing defendant's motions for a new trial and judgment n.o.v., granting plaintiff's request for delay damages, refusing plaintiff's request for counsel fees and costs in connection with her requests for admissions, and dismissing plaintiff's exceptions to the court's refusal of punitive damages is affirmed. So much of the court's order as deducted $15,000 from the jury's award for economic loss is reversed.

The judgment in favor of the plaintiff is modified to the sum of $106,980 for economic loss, $140,000 for non-economic loss, with delay damages, as modified, of $18,523.50. The case is remanded for entry of the judgment as modified.