611 A.2d 1174

**Anthony J. BOTEK, Appellant,**

v.

**MINE SAFETY APPLIANCE CORP. a/k/a M.S.A.
Earl Brooks Fire Equipment Supply and
Duncott Hose Company, Appellees.**

Supreme Court of Pennsylvania.

Argued April 9, 1992.

Decided June 17, 1992.

Ronald R. Pellish, Jacqueline L. Russell, Pottsville, Barnaby C. Wittels, Philadelphia, for appellant.

Lawrence E. Flatley, Pittsburgh, for appellees.

Before FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case concerns a remittitur granted by the Superior Court 412 Pa.Super. 641, 594 A.2d 778 (1991) after a Schuylkill County trial court jury awarded substantial damages to Plaintiff–Appellant. The underlying facts are as follows. On March 28, 1982, Plaintiff–Appellant, Anthony J. Botek, was in training at a fire fighting school. After putting on an air pak and mask, Appellant, along with other trainees, entered a truck body containing a barrel of burning fuel oil, all of which was designed to simulate entry into a burning building. The air pak had been mistakenly filled with carbon monoxide instead of oxygen and Appellant was injured by inhaling the carbon monoxide. Appellee, the Mine Safety Appliance Corporation (M.S.A.), had manufactured, filled and distributed the air pak and they admitted liability. Hence, the case went to trial solely on the issue of damages. The jury returned a verdict in favor of the Plaintiff–Appellant in the sum of $350,000.00. Delay damages of $203,243.56 were later added under Pa.Rule of Civil Procedure 238. M.S.A. moved for a new trial or "remittitur" (that is, a request for a court order reducing the amount of damages he had been awarded). The trial court (Baldwin, J.) denied the motion and M.S.A. appealed to the Superior Court. Relying on *Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976), the Superior Court found the verdict excessive, but instead of remanding for a new trial, they granted the remittitur themselves, reducing Plaintiff–Appellant's damages to his actual out of pocket medical expenses of $783.05. We granted review because the result here seemed grossly unfair and contrary to our previous decisions. For the reasons set forth below, we reverse.

The Superior Court analyzed Plaintiff–Appellant's injuries as being rather trivial in nature. The trial judge's opinion rejecting M.S.A.'s motion for remittitur or a new trial, from which we summarize the following uncontradicted facts, presents a fuller picture. Following inhalation of the carbon monoxide, Plaintiff–Appellant lost consciousness. When he awoke, he was no longer inside the truck where the test had been conducted, but instead found himself on the ground surrounded by others 'and receiving oxygen from an ambulance attendant. He felt lost and confused and did not know what had occurred. As he regained his senses, he began to experience severe headaches, nausea and disorientation. He was taken to a hospital where he was x-rayed and blood tests were administered. Throughout the stay at the hospital, he continued to receive oxygen, and while there the headaches and nausea became less severe. He was discharged after six hours with instructions to return if he had further difficulty in breathing.

At home the Plaintiff–Appellant continued to experience headaches, nausea and twitching in the right side of his face and left arm. His realization of how close he came to dying in the incident caused insomnia because of his fear that he would not wake up if he went to sleep. He described these symptoms as being almost continuous during the first six months, after which they began to decrease. The accident left him with an inability to trust anyone or to talk about his problems. This feeling interfered with his relationship with his family and friends, and his days were limited to working and crying himself to sleep.

In spite of these problems, the Plaintiff–Appellant did not consult a physician until one year after the incident. He explained that he could not bring himself to talk about his problems and that he did not want to hear a doctor confirm that he had a physical or mental problem from the incident. His friends convinced him to consult his family physician, who referred him for neurological testing. When tests indicated no evidence of organic brain disfunction, the neurologist referred him to Dr. Thomas, a trained psychologist. Dr. Thom-

as also found no evidence of organic brain disfunction, but concluded that the Plaintiff–Appellant was suffering from Post–Traumatic Stress Syndrome caused by the accident and that he was in need of counselling.

No counselling took place, apparently because Plaintiff–Appellant was under the impression that the physicians would contact him to initiate the counselling, and when they did not, he made no attempt to secure further treatment. From June of 1983, when he saw Dr. Thomas, until July of 1988, when he was examined by one Dr. Turchetti,[1] the Plaintiff–Appellant's symptoms gradually decreased in severity. Dr. Turchetti also found no evidence of organic brain disfunction, but concluded that the victim had suffered from depression and continued to suffer from chronic Post–Traumatic Stress Disorder caused by the accident. Dr. Turchetti found that the Plaintiff–Appellant had substantially improved at the point of his examination and that with counselling and drug therapy for anxiety, he could achieve a satisfactory result in three to six months. Up to the time of trial, the Plaintiff–Appellant had received no actual treatment for his condition, nor had he sought to initiate such treatment.

While the Plaintiff–Appellant's physical injury was limited to headaches and nausea that decreased in severity from the time of the incident, it was clear to the trial court from the testimony of the Plaintiff–Appellant, Dr. Thomas and Dr. Turchetti, that the victim suffered from a severe and chronic Post–Traumatic Stress Syndrome that was exasperated by his failure to initiate treatment at an early date. By the time of trial, the Plaintiff–Appellant had already endured the effects of his emotional disorder for over seven years. He suffered no organic brain disfunction, and no objective scientific tests confirmed the existence of any injury to him, either physical or emotional; but Dr. Turchetti, a trained and experienced psychiatrist, originally hired by M.S.A. (see footnote 1, *supra*), observed the Plaintiff–Appellant's mood changes which

1. Dr. Turchetti was M.S.A.'s expert who examined Plaintiff–Appellant at M.S.A.'s request. M.S.A. decided not to call this psychiatrist at trial. Dr. Turchetti then agreed to testify as an expert on behalf of Plaintiff–Appellant and he later did so.

caused him to cry uncontrollably during the examination. It was Dr. Turchetti's opinion and observation that the mood changes were genuine. During the trial, the Plaintiff-Appellant almost continually cried and sobbed during his testimony. The jury was in a position to observe him carefully and determine in their own minds whether the emotional instability that he exhibited was genuine or contrived for purposes of obtaining a favorable verdict.

Both Dr. Thomas and Dr. Turchetti testified that counselling would be beneficial. Dr. Thomas offered no opinion regarding prospects for future recovery, and Dr. Turchetti clearly stated his opinion that the Plaintiff-Appellant could expect resolution of his problems within three to six months of proper treatment. It is also clear that the Plaintiff-Appellant's employment was in no way affected by his injuries. The size of the Plaintiff-Appellant's out-of-pocket expenses in this case were less than $800.00. There was no question in the mind of the trial judge that, based upon these expenses alone, the jury's verdict was excessive; but this is only one of the factors the trial judge thought had to be considered. The limited medical expenses were attributable to the victim's lack of treatment for his emotional problems during the more than seven years between the incident and the trial. The trial judge concluded that he could not say that the jury's verdict was so excessive as to shock one's sense of justice and warrant the granting of a new trial. Nonetheless, the Superior Court reversed.

We have held on numerous occasions that whether to grant a new trial because of excessiveness or inadequacy of the verdict is a matter within the sound and peculiar discretion of the trial court, which has observed the demeanor of the witnesses, and its decision will be sustained by an appellate court in the absence of a clear or gross abuse of discretion or error of law which controlled the verdict or the outcome of the case. *Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978); *Scaife v. Rockwell–Standard Corp.*, 446 Pa. 280, 285 A.2d 451

(1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d .806 (1972); *Baird v. Dun and Bradstreet,* 446 Pa. 266, 285 A.2d 166 (1971); *Corabi v. Curtis Pub. Co.,* 441 Pa. 432, 273 A.2d 899 (1971); *Wilson v. Nelson,* 437 Pa. 254, 258 A.2d 657 (1969); *Black v. Ritchey,* 432 Pa. 366, 248 A.2d 771 (1968); *Connolly v. Philadelphia Transportation Co.,* 420 Pa. 280, 216 A.2d 60, 18 A.L.R.3d 1 (1966); *Guzman v. Bloom,* 413 Pa. 576, 198 A.2d 499 (1964); *Skoda v. West Penn Power Co.,* 411 Pa. 323, 191 A.2d 822 (1963); *Adams v. Scheib,* 408 Pa. 452, 184 A.2d 700 (1962). Here, we think that the trial court judge (and the jury) acted reasonably and that they were not guilty of an abuse of discretion. Certainly the Superior Court was entitled to disagree with their conclusion on the merits, but the Superior Court was not free to *substitute* their judgment for that of the trial court under our decisions. It seems apparent to us that the reason the Superior Court felt free to substitute their judgment for that of the trial court and grant the drastic remittitur that they did in this case was that they did not regard Plaintiff–Appellant's emotional and psychological injuries as serious or as entailing real pain and suffering. We think that this was an erroneous usurpation of the primary function of the jury and the trial court. It is simple black letter law that a tortfeasor must take its victim as it finds him. Plaintiff–Appellant suffered objective, measurable, observable physical injuries here (although they were relatively mild). All of the consequent psychological and emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called "impact rule." See, *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987), and the cases cited therein. The jury in the instant case listened to uncontradicted expert medical witnesses (including one originally retained by M.S.A., see footnote 1, *supra* ), they heard Plaintiff–Appellant testify, and they concluded that Plaintiff–Appellant suffered substantial long-term mental and emotional ills as a result of M.S.A.'s admitted negligence. They decided to compensate him for that suffering at the rate of $50,000.00 per year. That was reasonable

and that is where the matter should have ended.[2]

The order of the Superior Court is reversed.

NIX, C.J., and LARSEN, J., did not participate in the consideration or decision of this matter.

**2.** The fact that Plaintiff–Appellant was resistant to treatment does not disqualify him from receiving compensation. It is clear that where a claimant's rejection of treatment is part of his emotional injuries, he may recover damages in spite of the failure to receive treatment. *See, Browning v. United States*, 361 F.Supp. 17 (E.D.Pa.,1973).