636 A.2d 661

**Deborah Lee LUPKIN,**

v.

**Gerald J. STERNICK, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1993.

Filed Jan. 24, 1994.

Frederick W. Ulrich, Asst. Public Defender, Harrisburg, for appellant.

Frederick J. Fanelli, Pottsville, for appellee.

Before ROWLEY, President Judge, and OLSZEWSKI and BECK, JJ.

ROWLEY, President Judge:

Gerald J. Sternick appeals from the order of the trial court granting appellee Deborah Lee Lupkin's motion for a new trial. In this appeal, he challenges the propriety of that decision. After a thorough review of the record and the applicable case law, we affirm the order.

Appellant and appellee were involved in a motor vehicle accident on June 22, 1989 when appellant's vehicle struck the rear end of appellee's vehicle. On November 16, 1990, appellee filed a civil complaint against appellant seeking damages for injuries she sustained in the accident. At the outset of trial, appellant conceded the issue of liability, and the trial focused solely on the issue of damages. The jury returned a verdict for zero damages. The trial court granted appellee's subsequent motion for a new trial, and appellant filed this timely appeal.

Appellant sets forth various reasons why the trial court erred in granting appellee's motion for a new trial. In considering those arguments, we apply the following standard of review:

It is a fundamental and longstanding precept that the decision to order a new trial is one that lies within the discretion of the trial court. *E.g. Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 24, 545 A.2d 861, 865 (1988); *Colosimo v. Pennsylvania Electric Co.*, 513 Pa. 155, 163, 518 A.2d 1206, 1210 (1986); *Smyth v. Philadelphia & West Chester Traction Co.*, 263 Pa. 511, 516, 107 A. 20, 21 (1919). This means that the trial court has considerable latitude within which to act, but there are also very specific limits to what it can do.

> The term 'discretion' imports the exercise of judgement, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

P.L.E. New Trial § 2. One way of summing up all the qualities described in this definition of a valid exercise of discretionary power is to say that the decision had merit. Conversely, if the reason for performing a discretionary act had no merit, then the trial court abused its discretion. Thus, when viewed in terms of the degree of scrutiny that should be applied, an inquiry into an abuse of discretion is operationally equivalent as one into the merit of the trial court's decision.

*Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447–48, 625 A.2d 1181, 1184–85 (1993). If the trial court indicates that the reasons it gives for granting a new trial are the only basis for that decision, this Court can only examine those reasons. *Id.* at 448–49, 625 A.2d at 1185. In that situation, "circumstances may still demand a review of the entire record. However, the purpose for doing so is not to locate a valid reason for

affirming the order. The inquiry is strictly directed at determining whether the trial court's stated reasons and factual basis can be supported." *Id.* at 452, 625 A.2d at 1187. This Court cannot substitute its judgment for that of the trial court. *Botek v. Mine Safety Alliance Corp.*, 531 Pa. 160, 166, 611 A.2d 1174, 1176–77 (1992).

In the present case, the trial court stated its reasoning as follows: "Defendant offered no evidence that plaintiff did not suffer any injuries or that she did not suffer a wage loss. Thus, without evidence contradictory to the existence or to the initial cause of plaintiff's injuries, the jury was not free to reject plaintiff's claim." Trial Court Order (McCloskey, P.J.) at 2.

In support of his assertion that the trial court erred, appellant first contends that the jury was free to disregard appellee's complaints of pain because there was no objective medical proof to support those complaints. Initially, we note that, contrary to appellant's assertion that there was no objective proof of pain other than appellee's own complaints, Dr. James Barrett testified that during his examination of appellee's neck he felt trigger points, or lumps of painful muscle tissue. He testified that if he feels a trigger point when examining a patient, he knows that the area should be painful, even if the patient does not tell him that he or she feels pain. Dr. Barrett also testified that he felt muscle spasms in appellee's lower back. Additionally, Dr. Barrett testified that soft tissue injuries often do not show up on X-rays and other tests.

Moreover, not only did appellee herself present evidence of her injuries and resulting expenses, but appellant's own expert medical witness, Dr. Stephen F. Latman, M.D., also testified to the existence of appellee's injuries. He testified that after examining appellee and reviewing records and the results of tests he performed, he concluded that she suffered a soft tissue injury which normally takes from six weeks to three months to heal. He also testified, however, that he himself

examined many patients who had soft tissue injury which resulted in chronic pain syndrome.[1]

Furthermore, Dr. Latman testified that as of the date on which he examined appellee, June 17, 1991, he would recommend that she perform only light or sedentary work. Specifically, he testified, "[Sedentary work is] not strenuous work. I recommended that she would have the opportunity to sit or stand according to her symptoms and that she not be required to lift more than ten pounds." Deposition Transcript of Dr. Stephen F. Latman, M.D., 11/18/91, at 51.

The circumstances of the present case are similar to those in another case considered by a panel of this Court. In *Hawley v. Donahoo*, 416 Pa.Super. 469, 611 A.2d 311 (1992), the plaintiff was involved in an automobile accident with the defendant, and the defendant conceded liability and conceded that the plaintiff suffered a compression fracture of the L–3 vertebra. The jury, however, awarded zero damages. The plaintiff appealed, and this Court reversed.

The Court recognized that where pain is subjective and has no identifiable medical source, the jury must believe that the pain in fact exists before the plaintiff will be compensated. However, the Court discussed why that rule did not apply in *Hawley*:

> While the jurors are the sole judges of credibility, and appellant's inconsistent and perhaps exaggerated testimony could have been perceived as an indication of appellant's interests of opportunity beyond pain which could dilute their belief in the existence of the occasion itself, the jury is not free to ignore an obvious injury. As our Supreme Court stated in *Thompson v. Iannuzzi*, 403 Pa. 329, 169 A.2d 777 (1961): "It is true that the jury is the final arbiter of facts but it may not, in law, ignore what is patent to the eye, obvious to the mind and clear to the normal process of

1. Dr. Latman testified, "Chronic pain syndrome is a condition which a patient has pain for a long period of time, and we cannot make a definite diagnosis. We can't put our finger on what's causing the pain." Deposition Transcript of Stephen F. Latman, M.D., 11/18/91, at 56.

ordinary computation." *Id.* at 332, 169 A.2d at 778–789. Based on the uncontested evidence of the compression fracture, we find that appellant suffered compensable pain from a known medical source which was more than a mere transient rub of life.

*Id.* 531 Pa. at 474, 611 A.2d at 313–14.

In the present case, the record reveals that not only did appellant's own expert medical witness corroborate appellee's claims that she had been injured, but he also testified that he would recommend restricted working conditions. Although appellant's witness disagreed with appellee's assertions concerning the severity of the injury, he did not contest the existence of an injury. Furthermore, as the above discussion in *Hawley* reveals, even if the jury believed appellant's contention that appellee exaggerated her injuries, they were not free to award zero damages where there was an obvious injury. In light of the fact that appellant's own witness testified that appellee had been injured to such a degree that she would require a sedentary job, the trial court did not abuse its discretion in determining that a new trial was warranted.

Appellant also argues, "[T]he fact that Ms. Lupkin was in a second and unrelated accident, where she rammed into the rear end of a stopped vehicle, provided an alternative basis for the jury to reason that her symptoms were unrelated to the first accident and the product of her own fault." Appellant's Brief at 26.[2] This argument is based on the fact that appellee was involved in an accident on September 28, 1990. We disagree with appellant that the jury could reasonably have concluded that appellee's injuries were caused solely in the second accident.

First, appellant's own witness testified that appellee's injuries resulted from the accident which occurred on June 22, 1989. That testimony was not rendered irrelevant merely because appellee did not tell Dr. Latman about the second accident. As appellee testified, when her doctor examined her

2. We note that it was not established that appellee was at fault in the second accident.

after the second accident, he determined that there was no change in her condition. Furthermore, once he knew about the second accident, Dr. Latman could have, but did not, change his conclusions. Similarly, Dr. Latman did not qualify his conclusions on the basis that he did not have the results of tests previously performed on appellee.

Moreover, appellee presented substantial evidence that she had been injured prior to September 28, 1990, including the need for an eight-day hospital stay immediately following the first accident and various medications and physical therapy throughout the months prior to the second accident. It would have been patently unreasonable for the jury to conclude that appellee's medical problems which began on June 22, 1989 were caused by an accident which occurred on September 28, 1990.

Finally, appellant did not adequately question appellee's wage loss claim merely because he presented evidence that the plant where she worked prior to the accident closed soon after the accident. The relevant inquiry in a personal injury action is whether and to what extent the plaintiff's economic horizons have been shortened. *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991); *Sherhan v. Besteder*, 347 Pa.Super. 11, 500 A.2d 130 (1985). A plaintiff's wages immediately prior to the accident are an indication of his or her earning capacity if he or she had not been injured. Therefore, that evidence is relevant even though the plaintiff would not have that job even if the accident had not occurred. In the present case, it would have been unreasonable for the jury to conclude that appellee's economic horizons had not been shortened merely because the plant where she worked prior to the accident had closed.

For the above reasons, we conclude that the trial court did not abuse its discretion in granting appellee's motion for a new trial. We therefore affirm the order.

Order affirmed.

BECK, J., files a dissenting statement.

BECK, Judge, dissenting.

The trial court summarized its rationale for granting a new trial as follows:

Defendant offered no evidence that plaintiff did not suffer any injuries or that she did not suffer a wage loss. Thus, without evidence contradictory to the existence or to the initial cause of plaintiff's injuries, the jury was not free to reject plaintiff's claim.

Trial Court Order, p. 2. I believe that the trial court abused its discretion in impliedly requiring the defendants to *disprove* damages, when the burden of going forward properly lies with the plaintiff, and I must dissent.

It is well established that the "duty of assessing damages is within the province of the jury, and as triers of fact, they weigh the veracity and credibility of the witnesses and their testimony." *Cree v. Horn,* 372 Pa.Super. 296, 539 A.2d 446, 450 (1988) (*quoting Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16, 22 (1985)). This is true where the plaintiff's evidence is uncontradicted by the defendant, or even where the defendant has presented no evidence at all. *Brodhead v. Brentwood Ornamental Iron Co.,* 435 Pa. 7, 11, 255 A.2d 120 (1969); *Morgan v. Philadelphia Electric Co.,* 299 Pa.Super. 545, 445 A.2d 1263, 1265 (1982).

The jury in this case was free to disbelieve the plaintiff's evidence of injury and its cause, and their verdict "should not be interfered with unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence." *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980). In granting a new trial as to damages, the trial judge improperly substituted his own judgment for that of the jury, and this court should reverse. *See Tonik v. Apex Garages, Inc.,* 442 Pa. 373, 275 A.2d 296 (1971).

The defendant's medical witness, Dr. Latman, testified that the plaintiff apparently suffered from "chronic pain syndrome", a "condition which [sic] a patient has pain for a long period of time, and we cannot make a definite diagnosis. We can't put our finger on what's causing the pain." Deposition

of Stephen F. Latman, M.D., p. 56. This defense witness testified that there was no objective evidence of the plaintiff's injuries to support her subjective complaints of pain. The majority concedes that in such cases, before the jury may award damages, it has to *believe* that there is pain. Nonetheless, the majority have affirmed the trial court's decision to vacate the jury's verdict.

The majority relies upon *Hawley v. Donahoo,* 416 Pa.Super. 469, 611 A.2d 311 (1992), for its holding. In *Hawley,* the plaintiff suffered a compression fracture of the L–3 vertebra, and the jury awarded zero damages. This court reversed because "the jury is not free to ignore an obvious injury." *Id.* at 474, 611 A.2d at 313–14. The question in this case is whether plaintiff's alleged soft tissue injury was an "obvious injury" like the compression fracture in *Hawley.*

Our supreme court recently decided that injuries which "obviously" are accompanied by pain include a broken bone, stretched muscle, twist of skeletal system, injury to nerve, organ or function, and all consequences of injury traceable by medical science and common experience as sources of pain and suffering. *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516, 518 (1988). If the injury is subjective, and has no known medical source, the jury "are not to be faulted ... if they do not believe all they are told and all that their common experience does not accept." *Id.* The jury, as always, may believe "all, some, or none of the evidence, and with their verdict the matter ends." *Id.* at 169, 542 A.2d at 519.

A low verdict is adequate, and no new trial is necessary, where the jury heard conflicting testimony on the degree of injury. *Dawson v. Fowler,* 384 Pa.Super. 329, 558 A.2d 565 (1989). Dr. Latman testified that the plaintiff exaggerated her symptoms, and that there were no objective observations of injury. Latman Deposition, 27, 57. There also was evidence that the plaintiff did not credibly describe her symptoms, and that the accident was minor. Latman Deposition, 14, 21–22; N.T. 2/4/89, 178. The record reveals similarly contrasting testimony with respect to the plaintiff's actual lost wages. N.T. 2/4/89, 119–22. Faced with the conflicting testi-

mony of the witnesses, and their relative veracity and demeanor, the jury was permitted to disbelieve the plaintiff's claims. *See Holland v. Zelnick,* 329 Pa.Super. 469, 478 A.2d 885 (1984) (issue of whether plaintiff actually was suffering any pain and whether any such pain was caused by the defendants' conduct is question for the jury).

Because I believe that the trial court's grant of a new trial under the facts of this case was an abuse of discretion, I would reverse its order and reinstate the jury's verdict.