## Brown v. Save-a-Lot

*Mark F. Greenfield,* for plaintiff.
*Daniel D. Krebbs* and *James W. Gicking,* for defendants.

MASSIAH-JACKSON, *J.,* June 29, 2010—

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 1, 2008, it was pouring rain all morning. Mrs. Diane Brown, age 58, arrived at Save-A-Lot supermarket in Folcroft, Pennsylvania, after 12:30 p.m. N.T. 57-58. She went into the store alone while her husband, Clement Brown, parked the car. N.T. 59.

When Mrs. Brown entered the vestibule area of the store, she wiped her feet on the mat then proceeded toward the shopping carts. She slipped on the wet floor and fell very hard on her buttocks. N.T. 60-62. Mrs. Brown thought she had broken her tailbone due to the severe pain. She had put her left hand out to break her fall and her hand started to swell. She felt pains in her tailbone, back and left arm going into her shoulder. N.T. 63-65. Mrs. Brown is left-handed. N.T. 70. She became nauseous and was not able to stand.

The store personnel called an ambulance and she was taken to Taylor Hospital. N.T. 71-75. Mrs. Brown treated with Delaware County Pain Management for eight months, however, she continues to suffer continuing pain, stiffness and swelling, in her hips, back and arm. N.T. 77-89.

Plaintiff Brown commenced this litigation against Save-A-Lot and SuperValu Inc. in July 2008. After two

days of trial, in November 2009, a jury awarded Diane Brown $100,000 for non-economic damages. (All references to the trial transcript are November 16, 2009, unless otherwise indicated.)

After considering the motions for post-trial relief filed by defendant Save-A-Lot, and for the reasons which follow, the motions for new trial and/or judgment nov are denied.

## II. LEGAL DISCUSSION

The jury had the opportunity to see extensive video surveillance tapes of the vestibule and lobby area of the store. The Save-A-Lot tape was played several times by counsel and was referenced by all witnesses and counsel throughout the trial. The jury had the opportunity to observe one of the Save-A-Lot employees, Ms. Daniels, slip and fall on the wet vestibule floor shortly before plaintiff Brown fell, N.T. 162-65, 172-73. Ms. Daniels fell while the store manager was mopping the vestibule area. N.T. 159-63.

### A. *Save-A-Lot Has Failed To Present Sufficient Grounds for Judgment n.o.v.*

Save-A-Lot asserts that it is entitled to judgment n.o.v. because the defendant had no actual or constructive notice that the vestibule floor was wet on February 1, 2008. Defendant's post-trial brief at page 15:

"Here, no evidence was presented that defendant Save-A-Lot had actual notice of the condition of water on the floor at the entrance to its facility. In fact, only minutes before plaintiff's accident, store employees had placed an additional mat in the vestibule to the store and had

mopped the area. The uncontradicted evidence thus presented was that Save-A-Lot not only conducted a careful survey only minutes before plaintiff's fall, but took every reasonable precaution to protect patrons to the store."

The record does not support this claim.

There are only two bases upon which a court may enter judgment n.o.v. The first is when the movant is entitled to judgment as a matter of law. The second is when the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Quinby v. Plumsteadville Family Practice Inc.,* 589 Pa. 183, 204, 907 A.2d 1061, 1074 (2006); *Moure v. Raeuchle,* 529 Pa. 394, 401, 604 A.2d 1003, 1007 (1972). Considering only the evidence which supports the verdict, the court must give the verdict winner the benefit of all doubt and of every fact and inference deducible from the evidence. *Griffin v. University of Pittsburgh Medical Center—Braddock Hospital,* 950 A.2d 996, 999 (Pa. Super. 2008); *Robertson v. Atlantic Richfield,* 371 Pa. Super. 49, 59, 537 A.2d 814. 819 (1987).

In this case, judgment n.o.v. is not appropriate. The jury heard the store manager testify that it was raining hard the entire morning of February 1, 2008. N.T. 155. They observed the video of Ms. Daniels bringing a mat into the vestibule area at 12:43 p.m. N.T. 159-62. The jury watched Ms. Daniels fall on the floor. N.T. 163. Plaintiff Brown entered the store at 12:48 p.m. when she fell and was injured. N.T. 172.

Clearly the evidence presented demonstrated that Save-A-Lot knew of the harmful/dangerous conditions due to the rain. Mr. Edwards testified that he worked over

and above the store "protocol" to engage in dry mopping, to place a caution cone in the area, and to add at least two 15-foot mats in the vestibule. N.T. 158-73, 185-87, 195-96. Restatement (Second) of Torts, §343A; *Zito v. Merit Outlet Stores,* 436 Pa. Super. 213, 647 A.2d 573 (1994) (reviewing the duty of care of a store owner to a business invitee). The evidence of actual notice was sufficient to preclude entry of judgment n.o.v.

## B. *Save-A-Lot Has Failed To Present Sufficient Grounds for a New Trial*

Save-A-Lot asserts that it is entitled to a new trial because the jury watched surveillance video and saw the store employee, Ms. Daniels, put a third 15-foot mat on the vestibule floor after plaintiff Brown fell. Defendant's post-trial brief, pages 16-21.

In order to constitute reversible error, an evidentiary ruling must be not only erroneous, but also harmful to the complaining litigant, *e.g. Gunn v. Grossman,* 748 A2d 1235 (Pa. Super. 2000); *Johnson v. Hyundai Motor America,* 698 A.2d 631 (Pa. Super. 1997), holding that a new trial is warranted when there is a palpable abuse of discretion or an error of law which controls the outcome of the case. Under the circumstances presented here, a new trial is not warranted.

Initially, it must be noted that defendant Save-A-Lot never filed a pretrial motion in limine to limit or exclude the store surveillance video. Motions in limine are a procedure to obtain rulings on the admissibility of evidence prior to trial and before evidence has been offered or brought to the attention of the jury, *e.g. Rachlin v. Edmison,* 813 A.2d 862 (Pa. Super. 2002); *Common-*

*wealth v. Noll,* 443 Pa. Super. 602, 605, 662 A.2d 1123, 1125 (1995); Packet and Poulin, Pennsylvania Evidence, §103-4, third ed. (West 2007). When Save-A-Lot failed to bring this portion of its own store video to the trial court's attention in a timely and specific manner prior to trial, the supermarket lost its opportunity to obtain any preventative measures. The surveillance tape was provided to the plaintiff by the supermarket, thus, Save-A-Lot had full knowledge of the contents, yet failed to act.

With this in mind, the trial court must engage in a two-part analysis when considering if a new trial should be ordered: First, was an evidentiary mistake made; and, second, if so, was the mistake prejudicial to the complaining litigant. *American Future Systems v. Better Business Bureau,* 872 A.2d 1202, 1212 (Pa. Super. 2005); *Bey v. Sacks,* 789 A.2d 232, 237 (Pa. Super. 2001). The record does not reveal an evidentiary mistake.

Defendant Save-A-Lot suggests that when the jury observed defendants employee put the third mat in the vestibule, the evidence of a subsequent remedial measure was improper. It is true that Rule 407 of the Pennsylvania Rules of Evidence generally renders remedial measures not admissible. Rule 407, however, has recognized exceptions:

"This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment, or to prove other matters if controverted, such as ownership, control, or feasibility of precautionary measures."

Here, the evidence was permitted because it addressed issues of feasibility and impeachment.

• Impeachment—Prior to trial at his deposition, the store manager testified that the entire area of the vestibule was

covered with floor mats, except for a three-inch gap. N.T. 30. Then during our trial, Mr. Edwards testified, "there was always a mat leading towards the shopping carts at the store." N.T. 30. Both of these statements were challenged by the plaintiff. The video was shown to demonstrate to the jury the wide areas of the vestibule where no mats had been placed. Mr. Edwards was impeached by use of Save-A-Lot's surveillance tape. See *Smalls v. Pittsburgh-Corning Corporation*, 843 A.2d 410 (Pa. Super. 2004), where remedial measures are offered to impeach a witness claim, they are admissible.

• Feasibility—Mr. Edwards repeatedly stated that his efforts to keep the vestibule safe during the rainy weather "went beyond protocol." N.T. 155. He stated that it was not possible to cover the entire area with mats. "It's nothing more that could've been done." N.T. 158. He stated that the store did everything reasonable to prevent the accident. He explained to the jury that bringing out the additional mat sooner would not have made any difference, because, "we already went beyond our call of duty." N.T. 185. Mr. Edwards stated that the two mats were sufficient to cover the area. N.T. 186. *Phatak v. United Chair Company*, 756 A.2d 690 (Pa. Super. 2000); *Mendralla v. Weaver Corporation*, 703 A.2d 480 (Pa. Super. 1997), where both cases discussed that feasibility is a permissible exception where safety has been challenged.

Finally, even assuming arguendo that viewing the video of the third mat was erroneous, this defendant has not explained how the supermarket was harmed. The jury watched as a supermarket employee slipped on the same vestibule floor and fell on her buttocks in the same manner as Diane Brown, the plaintiff. That dramatic portion

of the surveillance video was not challenged by Save-A-Lot.

## C. *The Verdict Award Does Not Shock This Court's Conscience*

Save-A-Lot contends that the verdict award is excessive. This court does not agree with the contention. The decision whether or not to grant remittitur lies within the discretion of a trial court. *Boteck v. Mine Safety Appliance Corporation,* 531 Pa. 160, 611 A.2d 1174 (1992) and cases cited at 165, 611 A.2d at 1176; *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 225, 620 A.2d 1185, 1193 (1993). A jury verdict, if supported by the evidence, will be permitted to stand when there is nothing to suggest that the jury was guided by partiality, prejudice, mistake or corruption. Neither a new trial nor remittitur is appropriate. *Carminati v. Philadelphia Transportation Company,* 405 Pa. 500, 176 A.2d 440 (1962); *Bey v. Sacks,* 789 A.2d 232 (Pa. Super. 2001).

The Superior Court in *Prather v. H-K Corporation,* 282 Pa. Super. 556, 423 A.2d 385 (1980), stated at 565, 423 A.2d at 389:

"The issue of the amount to be awarded an injured person for pain and suffering and loss or impairment of earning power, both past and prospective is primarily a jury question. . . . It is the duty of the trial court to enforce the jury's verdict and to interfere only 'when the circumstances cry for judicial interference'. . . . [Moreover, a] substantial verdict, if supported by the evidence, must be permitted to stand and will not be set aside when there is nothing to suggest that the jury was in any way guid-

ed by partiality, prejudice, mistake or corruption." (citations omitted)

Similarly, the Pennsylvania Supreme Court stated in *Carminati v. Philadelphia Transportation Company,* 405 Pa. 500, 176 A.2d 440 (1962), that judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant.

In *Kemp v. Philadelphia Transportation Company,* 239 Pa. Super. 379, 361 A.2d 362 (1976), the Superior Court enumerated several factors to be considered in determining the reasonableness of the jury verdict: (1) The severity of the injuries; (2) Whether the injury is demonstrated by physical evidence; (3) Whether the injury will affect the plaintiff permanently; (4) Plaintiff's ability to continue employment; and (5) The disparity between expenses and verdict amount. See also, *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 620 A.2d 1185 (1993); *Wagner by Wagner v. York Hospital,* 415 Pa. Super. 1, 608 A.2d 496 (1992).

The jury observed Mrs. Brown as she described her injuries and treatment. She fell so hard that she thought she had broken her tailbone. N.T. 63-65. Her feet went out in front of her. Right after she fell, her left hand started to swell. She had pain in her tailbone, back and left arm going into her shoulder. N.T. 63-65. She had two MRIs. Mrs. Brown was treated for eight months at Delaware County Pain Management, receiving chiropractic care, massage, and aqua therapy. N.T. 74-75. She also received medications from other physicians. N.T. 75. The treatment was helpful, however, her injuries have not resolved. N.T. 75-76. Mrs. Brown continues to suffer hip pain, shoulder pain and back pain going down into her hip and legs. N.T. 77. Further, in inclement weather,

Mrs. Brown has swelling in her hip. N.T. 82. She sometimes uses a cane and has constant problems trying to sleep. N.T. 82-84. Mrs. Brown's medical hills totaled nearly $16,000.

Dr. Guagliardo, an orthopedic surgeon, opined that Mrs. Brown's prognosis was guarded. Video, N.T. 28. According to the physician, the fact that the plaintiff was still in pain one year after the accident indicated that Mrs. Brown may need surgery on her shoulder and her back in the future. Video, N.T. 29. The surgeon explained to the jury that two MRI scans revealed swelling and inflammation in the plaintiffs left shoulder and L4-45 and L5-S1 disc herniations in her lower back. Video, N.T. 21-24. Dr. Guagliardo performed a physical examination of Mrs. Brown in March, 2009. He concluded that she has limited flexion, rotation and side bending of her back. He also determined tenderness and significant back pain. Video, N.T. 25-26. The diagnosis of plaintiff's orthopedic surgeon expert was muscle strain in her neck, midback and low back, myofacial injury to the facial coverings of her muscles, tendinitis and impingement syndrome in her shoulder, herniated discs, left cervical radiculopathy and lumbar radiculopathy. Video, N.T. 24-26. He testified that those injuries resulted from the fall on February 1, 2008. According to Dr. Guagliardo, the accident aggravated prior herniated discs injuries that occurred in 1988. Video, N.T. 28. The jury also saw the video testimony of Dr. Joseph Bernstein, the defendant's doctor. He agreed that the medical imaging studies show degenerative changes.

The injuries impact Mrs. Brown's daily life. She feels that she is limited in the activities that she can do independently. Mrs. Brown is dependent on her husband for

chores such as grocery shopping, laundry and cleaning. N.T. 81, 85. The plaintiff is unable to participate in activities that she previously enjoyed, such as bowling, entertaining at home, shopping with friends and physical activities with her grandchildren. N.T. 85-86, 88-89. The plaintiff testified that she is embarrassed about the smells of ointments and patches that she uses to help with her pain. N.T. 87.

When appraising all of the evidence and the many items of damages that the jury was required to consider, this court, which sits an as experienced civil trial court and which had the benefit of seeing and hearing all of the evidence, has no hesitancy in concluding that the jury's verdict was fair, thoughtful and reasonable. See *Haines v. Raven Arms*, 536 Pa. 452, 640 A.2d 367 (1994). The request for remittitur is denied.

### III. CONCLUSION

For all of the reasons set forth above, defendant Save-A-Lot's motions for new trial and/or judgment n.o.v. are denied. Judgment is entered in favor of Diane Brown in the amount of $100,000.

### ORDER

And now, June 29, 2010, after consideration of the defendant's post-trial motions and plaintiff's response thereto, and for the reasons set forth in the memorandum filed this date, it is hereby ordered that the motions for new trial and/or judgment n.o.v. are denied, and judgment is entered in favor of Diane Brown in the amount of $100,000 and against Moran Foods Inc. d/b/a Save-A-Lot and SuperValu Inc.