HENRY J. WILKINS, Plaintiff v. CSX TRANSPORTATION, INC., Defendant

No. COA08-181

(Filed 16 December 2008)

**1. Railroads— railroad worker—FELA action—foreseeability—directed verdict denied**

The trial court did not err by denying defendant railroad's motion for a directed verdict on the issue of negligence in the injury of a railroad worker. The worker was injured while lifting a 65 to 75 pound water cooler when a co-worker dropped his side of the cooler; the injury was foreseeable by the co-worker and the foreseeability of harm is imputed from the .employee to the employer under the Federal Employers' Liability Act.

**2. Railroads— railroad worker—FELA action—lifting injury—voluntary change of partner—contributory negligence**

The trial court did not err by denying plaintiff's motion for a directed verdict on the issue of contributory negligence where plaintiff was a railroad worker who injured his back when a co-worker dropped his side of a water cooler that they were lifting. Plaintiff had a regularly assigned partner on the water crew but chose to ask for assistance from another employee who had never performed this task.

**3. Railroads— railroad worker—FELA action—offset to award—collateral source**

The trial court erred by offsetting an award received by an injured railroad worker by the amount received for Railroad Retirement Board Benefits. Those payments were a collateral source and were not subject to being offset, despite defendant's contention that an amendment to the Railroad Retirement Act changed the funding of the benefits. The collateral source rule depends less upon the source of funds than the character of the benefits, and the purpose and nature of these benefits did not significantly change.

Appeal by plaintiff and cross-appeal by defendant from a judgment entered 22 August 2007 by Judge William C. Griffin in Northampton County Superior Court. Heard in the Court of Appeals 27 August 2008.

WILKINS v. CSX TRANSP., INC.

[194 N.C. App. 338 (2008)]

*Shapiro, Cooper, Lewis & Appleton, P.C., by Randall E. Appleton; and John J. Korzen, for plaintiff-appellant/cross-appellee.*

*Millberg, Gordon & Stewart, P.L.L.C., by John C. Millberg and Jonathan P. Holbrook, for defendant-appellee/cross-appellant.*

CALABRIA, Judge.

Henry J. Wilkins ("plaintiff") sustained back injuries while working as a maintenance of way worker for CSX Transportation, Inc. ("defendant"). He filed a complaint in Northampton County Superior Court under the Federal Employers' Liability Act 45 U.S.C. § 51 *et seq.* ("FELA"), which makes railroads liable to their employees for injuries "resulting in whole or in part from the negligence" of the railroad, §51. Contributory negligence is not a bar to recovery under FELA, but damages are reduced "in proportion to the amount of negligence attributable to" the employee, §53. Plaintiff was awarded $61,500 by a jury. Judge William C. Griffin ("Judge Griffin") awarded an offset against the verdict of $7,437.90, an amount equal to what defendant had paid for plaintiff's injury in the form of "Tier II" Railroad Retirement Board disability payments. This reduced plaintiff's recovery to $54,062.10, and judgment for that amount was entered by Judge Griffin on 10 September 2007.

Plaintiff appeals Judge Griffin's order denying his motion for a directed verdict on the issue of contributory negligence as well as Judge Griffin's order offsetting his award for Railroad Retirement Board disability benefits he received. Defendant cross-appeals Judge Griffin's order denying their motion for a directed verdict on the issue of defendant's negligence. We find no error in part, and reverse the offset of plaintiff's award.

Plaintiff was injured while performing his duties as a maintenance of way worker for defendant. On 27 August 2003, plaintiff was tasked with placing water coolers weighing an estimated 65-75 pounds onto machines for his coworkers. This task required water coolers to be removed from a pickup truck and manually loaded onto a platform on each machine. This was plaintiff's normal assignment and he was assisted by Willie Dailes ("Dailes") at the time of his injury, although plaintiff was normally assisted by C.A. Gillis ("Gillis") for this task.

At the time of his injury plaintiff and Dailes were attempting to lift a water cooler onto railroad machinery when Dailes unexpectedly

dropped his side of the cooler. Plaintiff was pulled to the ground, injuring his back. Although plaintiff knew he had injured his back, he continued to work through the remainder of the week. Upon returning to work the following Monday, plaintiff was unable to continue working and reported his injury to his supervisor. Plaintiff was diagnosed with a lumbosacral sprain, and occupationally disabled due to his injuries.

[1] Defendant argues the trial court erred in denying their motion for a directed verdict on the issue of defendant's negligence. They argue that the evidence failed to establish the elements of foreseeability and breach of duty. We disagree.

We review this assignment of error *de novo*. In *Rogers v. Missouri P. R. Co.*, 352 U.S. 500, 1 L. Ed. 2d 493 (1957) a railroad employee tasked with burning vegetation growing along the tracks was injured when a passing train fanned the flames around him causing him to retreat and fall causing serious injury. The Supreme Court, while recognizing that the trial court could have found for the Railroad on the issue of negligence, held that "the decision was exclusively for the jury to make." *Id.* at 504, 1 L. Ed. 2d at 498.

"Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought." *Id.* at 506, 1 L. Ed. 2d at 499. "[F]or practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." *Id.* at 508, 1 L. Ed. 2d at 500.

Under FELA an employer is liable if an injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. To uphold the trial court's order denying defendant's motion for a directed verdict we must find that defendant, through its employee "played any part, however small" in the injury suffered by plaintiff.

Defendant argues that plaintiff's accident was not foreseeable, prohibiting a finding of negligence. We disagree. While "[r]easonable foreseeability of harm is an essential ingredient of FELA negligence," *Brown v. CSX Transp.*, 18 F.3d 245, 249 (4th Cir. W. Va. 1994), this foreseeability analysis is not limited to the management of the employer railroad. Just as the negligence of employees is imputed to the employer railroad in FELA actions, so to is the foreseeability of

harm. The question is not whether CSX management should have foreseen that loading water coolers in the manner they were being loaded could result in injury, the question is whether Dailes should have foreseen that dropping the water cooler without warning could result in injury to plaintiff. This injury was foreseeable, and sufficient evidence was presented to allow the jury to determine if Dailes breached his duty to complete the lift, or alternatively, give warning to plaintiff that he would be unable to do so.

[2] Plaintiff argues that the trial court erred in denying his motion for a directed verdict on the issue of contributory negligence. We disagree.

FELA provides that contributory negligence is not a bar to recovery, but merely diminishes the amount of damages recovered by the injured employee, essentially creating a comparative negligence structure. 45 U.S.C. § 53. In *Norfolk Southern R. Co. v. Sorrell,* the United States Supreme Court held that the causation standards for employer negligence and employee contributory negligence are the same. 549 U.S. 158, 166 L. Ed. 2d 638 (2007). To find error in the trial court's order we must find that the employee played no part, "even the slightest, in producing the injury." *Rogers,* 352 U.S. at 506, 1 L. Ed. 2d at 499. The defendant is entitled to an instruction on contributory negligence "if there is any evidence at all of contributory negligence." *Taylor v. Burlington N. R.R.,* 787 F.2d 1309, 1314 (9th Cir. 1986).

The trial testimony established that plaintiff had a safe procedure for handling the water coolers and that he voluntarily departed from this procedure. Plaintiff had a regularly assigned partner, Gillis, on the water crew to help him prepare and load the coolers. Plaintiff and Gillis performed this task together every morning. On the morning of the accident Gillis was on duty with plaintiff and sat in the truck while the water coolers were being unloaded.

Plaintiff chose to depart from this procedure when he asked another employee who had never previously assisted with this task, to help load a cooler onto a high platform. This evidence alone is sufficient to meet the burden of showing any evidence of contributory negligence. The trial court did not err in instructing the jury on contributory negligence.

[3] Plaintiff argues that the trial court erred in offsetting plaintiff's recovery by the amount defendant had paid for Railroad Retirement Board Benefits received by plaintiff. We agree.

Following the jury verdict and award, the court offset plaintiff's award by $7,437.90, an amount equal to the sum defendant paid into Tier II of the Railroad Retirement Account. The sum represented the amount of Tier II benefits the plaintiff had received through occupational disability and covered the time from the award of the benefits by the Railroad Retirement Board until the plaintiff qualified for a regular annuity under the Act. This was error.

In 1974, Congress enacted the current version of the Railroad Retirement Act, which altered the prior Act enacted in 1937. The Railroad Retirement Act establishes two tiers of benefits. Tier I benefits are roughly equivalent to Social Security benefits. Tier II "provides retirement benefits over and above social security benefits and operates similarly to other industrial pension systems." *CSX Transp., Inc. v. Gardner*, 874 N.E.2d 357, 362 (Ind. Ct. App. 2007). Railroad employees who are injured and unable to perform their duties may receive either an occupational disability annuity or a total disability annuity. 45 U.S.C § 231a(a)(1)(iv),(v). Payments under the Railroad Retirement Act are not based upon an injury due to the negligence of the railroad employer. To qualify for an occupational disability under the Railroad Retirement Act, the employee must have performed 240 months of railroad service and be permanently disabled from his normal railroad job, or be at least 60 years old with 120 months of service with the same level disability. A total disability is granted if the employee has at least 120 months of service and is disabled from all occupations. 45 U.S.C § 231a(a)(1). The amount of the annuity depends upon the length of the employee's railroad employment. *Gardner*, 874 N.E.2d at 362. Annuity payments by the Railroad Retirement Board are not subject to assignment, tax, legal process, or anticipation. 45 U.S.C § 231m(a).

Plaintiff argues that the collateral source rule prohibits an offset of plaintiff's award. "According to this rule a plaintiff's recovery may not be reduced because a source collateral to the defendant . . . paid the plaintiff's expenses. *Cates v. Wilson*, 321 N.C. 1, 5, 361 S.E.2d 734, 737 (1987).

Historically, courts have held that benefits received from the Railroad Retirement Board are from a collateral source and therefore not subject to setoff. However, the most influential case on the matter, *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 11 L. Ed. 2d 307 (1963), was determined before the Railroad Retirement Board split the Railroad Retirement Act benefits into two tiers. Defendant

argues that the Tier I benefits are comparable to the benefits as determined by *Eichel,* but the Tier II benefits are distinct, and not a collateral source as it is explained in *Eichel,* and therefore subject to setoff. We disagree.

The United States Supreme Court in *Eichel* held that "[t]he Railroad Retirement Act is substantially a Social Security Act for employees of common carriers . . . . The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer." *Id.* at 254, 11 L. Ed. 2d at 308-09. The *Eichel* Court, in making this statement relied on *New York, N. H. & H. R. Co. v. Leary,* 204 F.2d 461, 468 (1st Cir. 1953), which held that offset was not authorized for these benefits because of the Social Security nature of the benefits, and because the benefits received were not directly attributable to contributions made by the employer. We must determine whether the form of the Tier II benefits under the revised Act are so significantly changed that the *Eichel* reasoning no longer applies.

The Railroad Retirement Act, at the time of the *Eichel* decision, was funded equally by taxes between employers and employees. Any shortfall in the fund was supplemented by additional taxes against the employers. Currently, the Railroad Retirement Act is funded in part by taxes paid by the employer and employee. The Tier I taxes equal Social Security tax rates. The Tier II rate varies and is higher for the employer than the employee. The remainder of the fund is made up of fund transfers under the financial interchange with the Social Security system, investment earnings from the trust fund, general revenue appropriations for vested due benefit payments, income taxes on benefits and a work hour tax paid by railroad employees under the Railroad Retirement Tax Act. *Gardner,* 874 N.E.2d at 362.

Under both the 1936 act, and under Tier II of the current act, benefits are available to employees regardless of the source of the injury that caused the disability. Under both schemes benefits are based on any disability despite the cause, and on the years of service the employee has accrued in the system.

While the funding of Tier II benefits has changed, with the employer being responsible for a greater percentage of the cost, the purpose and availability of Tier II benefits has not changed in any significant way. Federal case law indicates that the latter is the more important factor. In determining whether a payment is from a collat-

eral source, "courts should look at the purpose and nature of the fund and of the payments, and not merely at their source." *Russo v. Matson Navigation Co.*, 486 F.2d 1018, 1020 (9th Cir. 1973) (internal citations and quotations omitted). "[T]he collateral source rule depends less upon the source of the funds than upon the character of the benefits received." *Reed v. E.I. du Pont de Nemours & Co.*, 109 F. Supp. 2d 459, 467 (S.D. W. Va. 2000).

The purpose and nature of Tier II benefits was not significantly changed by the 1974 amendment to the Act. Further, while the current Act places greater financial responsibility upon the employer for funding Tier II benefits, it does not change the nature of the payments, or the manner in which those payments will be apportioned to applicable employees.

The trial court erred in offsetting plaintiff's recovery by the amount defendant had paid for the Railroad Retirement Act benefits received by plaintiff. Plaintiff's payments from the Railroad Retirement Act were a collateral source, and were not subject to be offset. This portion of the trial court's judgment is reversed and this case is remanded for entry of judgment without the offset for the Tier II payments.

No error in part, reversed in part and remanded.

Judges TYSON and ELMORE concur.