**Lockley v. CSX Transportation Inc.**

*David L. Lockard, Lawrence A. Katz* and *Jack L. Wilson,* for plaintiff.

*Daniel J. Hampton* and *Stephen A. Hall,* for defendant.

MASSIAH-JACKSON, *J.,* March 30, 2009—On May 2, 2008, following two weeks of trial, the jury determined that CSX Transportation Inc. did violate the Federal Locomotive Inspection Act. The jury determined that CSX was negligent pursuant to the Federal Employers' Liability Act. The jury also determined that Albert Lockley was 22 percent comparatively negligent. The jury awarded Mr. Lockley $2,000,000 in damages. See court exhibit "A," attached hereto.

The plaintiff has filed a post-trial motion to mold the verdict and enter judgment, pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure. The defendant opposes that motion. The defendant has filed a series of motions alleging that the verdict is excessive, requesting remittitur, and seeking an offset. The plaintiff opposes those motions. See also, post-trial hearing, dated February 20, 2009.

For the reasons which follow the motions of CSX are denied. Judgment is entered in favor of Albert Lockley in the amount of $2,000,000 on the FLIA claim.

## A. THE VERDICT AWARD DOES NOT SHOCK THIS COURT'S CONSCIENCE

CSX contends that the verdict award is excessive and should be reduced by this court or a new trial ordered. CSX post-trial brief, pp. 70-76. This court does not agree.

The Superior Court in *Prather v. H-K Corporation,* 282 Pa. Super. 556, 565, 423 A.2d 385, 389 (1980), stated:

"The issue of the amount to be awarded an injured person for pain and suffering and loss or impairment of earning power, both past and prospective is primarily a jury question. . . . It is the duty of the trial court to enforce the jury's verdict and to interfere only 'when the circumstances cry for judicial interference.' . . . Moreover, a substantial verdict, if supported by the evidence, must be permitted to stand and will not be set aside when there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption."

Remittitur is appropriate only if an award is plainly excessive or exorbitant. *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 176 A.2d 440 (1962). See also, *Botek v. Mine Safety Appliance Corporation,* 531 Pa. 160, 611 A.2d 1174 (1992), and cases cited at 165-66, 611 A.2d at 1176; *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 225, 620 A.2d 1185, 1193 (1993) and cases noting that the grant or refusal of new trial because of the amount of an award is peculiarly within the discretion of the trial court. In this case because the jury decision is supported by the evidence neither a new trial nor remittitur will be granted.

In *Kemp v. Philadelphia Transportation Co.,* 239 Pa. Super. 379, 361 A.2d 362 (1976), the Superior Court enumerated several factors to be considered in determining the reasonableness of the jury verdict: (1) The severity of the injuries; (2) Whether the injury is demonstrated by physical evidence; (3) Whether the injury will affect the plaintiff permanently; (4) Plaintiff's ability to

continue employment; and (5) The disparity between expenses and verdict amount. See also, *Frazier v. Norfolk and Western Railway Company,* 996 F.2d 922 (7th Cir. 1993); *Wagner by Wagner v. York Hospital,* 415 Pa. Super. 1, 608 A.2d 496 (1992).

In this case the jury's decision reflects evidence that Mr. Lockley's neck pains, numbness and tingling started approximately five years before the trial, and, his life expectancy is at least 25 additional years. April 23, 2008, N.T. 163-65. Dr. Greene, the orthopedic surgeon, described Mr. Lockley's reduced neck motion, as well as pain with motion in his neck. Greene video, N.T. 38, 45. Mr. Lockley confirmed that post-surgery he suffers from daily pain and, at night the pain is worse. He takes sedatives to sleep. April 25, 2008, N.T. 53. The plaintiff's doctors confirmed that there was objective evidence of the cause of the severe and chronic pain. Prior to surgery, there was left side disc deformity and arthritis at C5-C6 and C6-C7. The changes in C5-C6 were trauma related— not acute trauma, but rather cumulative stress over time. Greene video, N.T. 59-60, 127.

Dr. Grossinger, who specializes in pain management for Mr. Lockley, described the pinched nerves in his neck and gave him five epidural steroidal injections. April 23, 2008, N.T. 18-19. The injections were supposed to relieve swelling on the discs and improve neck mobility. Mr. Lockley testified that the injections did provide relief for about two weeks, however, the pain returned. April 25, 2008, N.T. 36.

Dr. Greene's independent medical examination in July 2007, provided a second opinion to Mr. Lockley, and confirmed that a two-level cervical fusion surgery was

recommended. Greene video, N.T. 33-35, 77-78. The jury heard that the plaintiff was young for this type of injury, however, the EMG tests and MRI's were objective testing which revealed positive results of injury. Greene video, N.T. 32, 162. After the laminectomy surgery in November 2007, Mr. Lockley has limited range of motion in his neck. April 23, 2008, N.T. 26; April 25, 2008, N.T. 45. The surgery was not successful. The pain and numbness has started to return according to Mr. Lockley and Dr. Grossinger. April 23, 2008, N.T. 32. Scar tissue has formed and is pressing on the cervical nerves.

Mr. Lockley is permanently disabled. He will require future epidural injections and radio frequency neurotomy. April 23, 2008, N.T. 29-30; April 25, 2008, N.T. 44-45. The strong pain medications make the plaintiff nauseous, and also prevent him from working. April 25, 2008, N.T. 40, 45; April 23, 2008, N.T. 24, 122. Dr. Grossinger concludes the plaintiff will continue to require injections and many medications including Class II narcotics, Percocet, Ambien, muscle relaxers. He will have future medical bills. April 23, 2008, N.T. 28. Mr. Lockley reads at a high school level. His math and spelling are at a 6th grade level. April 23, 2008, N.T. 122-24.

The jury heard that no doctor has given approval for Mr. Lockley to return to any type of work. Greene video, N.T. 79; April 23, 2008, N.T. 38; April 29, 2008, N.T. 169-71.

The verdict award was based on many tangibles and intangibles. The jury charge was prepared by all counsel and read by the court. The items of damages included: (a) The physical pain and mental or emotional suffering that Mr. Lockley has experienced and is reasonably cer-

tain to experience in the future; (b) The nature and extent of Mr. Lockley's injury, whether the injury is temporary or permanent or whether it results in partial or total disability, including any aggravation of a pre-existing condition; (c) The present value of reasonably necessary medical care and supplies certain to be received in the future; (d) The earnings Mr. Lockley has lost to date and into the future; (e) The reasonable value of household services which Mr. Lockley was unable to perform to date and in the future. May 1, 2008, N.T. 144-46.

Mr. Lockley testified about the effect the injury has had on his activities of daily living, on his emotional state and his manner of living. For many years, Mr. Lockley's non-work activities involved participation in church functions. Each year he would cook and cater for the Usher Board, the Stewards Board, Women's Day, Men's Day, Delaware County Sunday School Breakfast, Men's Breakfast and Annual Fall Black Tie Event. April 25, 2008, N.T. 50-51. He used to participate on the bus trips to Lancaster Sight and Sound and the Lancaster shopping malls. He is no longer able to do these activities: too much walking at the malls; too much lifting and carrying for large scale banquets; and can no longer sit on long bus rides. April 25, 2008, N.T. 50-53.

Mr. Lockley stated that he is embarrassed and depressed. He does not go out. He is in continuing pain and discomfort. He can no longer cut his lawn or handle painting around the house. He misses his work and does not want to discuss his situation with others. He takes anti-depressant medications, but he continues to be tired and depressed. April 25, 2008, N.T, 46, 49-53, 109. He cannot carry his grandchildren or play with them as he

would like to. The jury observed his demeanor and manner as he testified.

Dr. Verzilli testified that Mr. Lockley's future lost earning capacity is in the range of $786,000 to $849,000. April 23, 2008, N.T. 163. He opined on replacement costs for lost household services, which reflect some of the family and household activities which the plaintiff can no longer do—up to age 70, April 23, 2008, N.T. 166-69, and gave a range of loss between $43,000, to $100,000. The plaintiff can no longer do heavy cleaning or lift heavy bags for shopping. The plaintiff was 53 years old at the time of trial.

When appraising all of the above factors and the many items of damages, this court which sits as an experienced civil trial court and which had the benefit of seeing and hearing all of the evidence, has no hesitancy in concluding that the jury's verdict was fair, thoughtful and reasonable. *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367 (1994). Under the circumstances present here, the verdict award, although substantial, is supported by the evidence. It is not excessive and does not shock this court's conscience. *Schneider v. National Railroad Passenger Corporation,* 987 F.2d 132 (2nd Cir. 1993); *Batchkowsky v. Penn Central Co.,* 525 F.2d 1121 (2nd Cir. 1975).

## B. THE REQUEST FOR REMITTITUR IS DENIED

The scenario conjured up by CSX simply did not exist—jurors and lawyers weeping in court from the earliest days of trial. CSX post-trial brief, pp. 73-76. This fiction, articulated for the first time in the post-trial briefs, demeans the substantial energy, resources and evidence

presented by both parties and all counsel during this litigation. There is *nothing* to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption.

CSX insists that it is entitled to a set-off against the verdict award in violation of the Collateral Source Rule. CSX post-trial brief, pp. 71-73; defendant's motion for offset to jury award; defendant's memorandum in opposition to plaintiff's motion to mold verdict and enter judgment pursuant to Rule 227.1. The defendant-railroad has presented two arguments in support of this position. First, CSX reiterates its notion that cross-examination should have been extended to make the jury aware that if Mr. Lockley retired at age 60, he could have received full retirement benefits. (The 30-60 Rule.) This issue has been addressed in the court's memorandum in support of order denying the defendant's motions for judgment n.o.v. and/or new trial, at pp. 43-45.

Second, CSX asserts that the verdict is excessive because Dr. Verzilli failed to subtract Tier I and Tier II Railroad Board taxes. April 23. 2008, N.T. 179-85. The defendant-railroad's related argument is set forth in the defendant's motion for offset to jury award. This motion is a request to this court that the verdict be reduced by the amount of a disability annuity attributable to CSX's contribution. The case law is clear that plaintiff's payments from the Railroad Retirement Act are a collateral source and are not subject to deduction by the expert witness nor as an offset by this court. April 23, 2008, N.T. 185. *Wilkins v. CSX Transportation Inc.,* 669 S.E.2d 784 (N.C. Ct. App. 2008) holds that the 1974 amendments to the Railroad Retirement Act have not vitiated

the Supreme Court decision in *Eichel v. New York Central Railroad Co.,* 375 U.S. 253 (1963). In *CSX Transportation Inc. v. Gardner,* 874 N.E.2d 357 (Ind. Ct. App. 2007), the appellate court provided an extensive analysis of the identical CSX contentions made herein and rejected all of the railroad's arguments. That court held that federal common law, the FELA, the Railroad Retirement Act, and the *Eichel* case are consistent in that the "Collateral Source Rule prevents CSX from setting off disability payment made ... from the FELA award." See also, plaintiff's reply in opposition to CSX's motion to offset the jury award, and cases cited therein, including inter alia, *Hileman v. Pittsburg & Lake Erie Railroad Co.,* 546 Pa. 433, 685 A.2d 994 (1996), reviewing the interplay between FELA and the Collateral Source Rule; *Griesser v. National Railroad Passenger Corporation,* 761 A.2d 606 (Pa. Super. 2000), *appeal denied,* 565 Pa. 672, 775 A.2d 807 (2001), where a new trial was ordered after trial court erroneously permitted the 30-60 Rule to be introduced into evidence.

Further, to the extent that CSX suggests that the jury should consider "after-tax income," reference is made to Dr. Verzilli's testimony on cross-examination confirming that he deducted federal and state taxes from his calculations. April 23, 2008, N.T. 177. The jury was told that the verdict award would not be taxed. May 1, 2008, N.T. 146; *Norfolk & Western Railway v. Liepelt,* 444 U.S. 490 (1980). Finally, as has been discussed in this court's memorandum in support of order denying the defendant's motions for judgment n.o.v. and/or new trial, pp. 21-23, a FELA plaintiff whose horizons have been limited by spinal fusion surgery is entitled to compensatory dam-

ages for loss of future earning capacity. *Wiles v. New York, Chicago and St. Louis Railroad Co.,* 283 F.2d 328 (3d Cir. 1960).

## C. CONCLUSION

The jury found that CSX violated the Federal Locomotive Inspection Act and that the violation caused, in whole or in part, the serious and permanent injuries suffered by Albert Lockley. This statute creates liability without regard to negligence. It is an absolute, statutory violation.

The evidence was sufficient to sustain the verdict. See court's memorandum in support of order denying the defendant's motions for judgment notwithstanding the verdict and/or new trial. Accordingly, judgment is entered in favor of plaintiff, Albert Lockley, in the amount of $2,000,000 and against CSX Transportation Inc.

---

## EXHIBIT "A"

## JURY INTERROGATORIES

(1) Did the defendant, CSXT, violate the Federal Locomotive Inspection Act?

__✔__ Yes ___ No

(If your answer is "yes" go on to question no. 2, if your answer is "no", proceed to question no. 3.)

(2) Was the defendant's violation of the Federal Locomotive Inspection Act a cause, in whole or in part, of the plaintiff's injuries?

___✔___ Yes ___ No

(Proceed to question no. 3.)

(3) Was the defendant railroad negligent?

___✔___ Yes ___ No

(If your answer is "yes" go on to question no. 4. If you answered "no" to questions 1 and 3 then you have finished your deliberations. Please notify the tipstaff. )

(4) Was the defendant's negligence a cause, in whole or in part, of the plaintiff's injuries?

___✔___ Yes ___ No

(If your answer is "yes" go on to question no. 5. If you answered "no" to question 1 and, also, you answered "no" to question 4, then you have finished your deliberations. Please notify the tipstaff.)

(5) Was Mr. Lockley negligent?

___✔___ Yes ___ No

(If your answer is "yes" go on to question no. 6, if your answer is "no", go on to question no. 8.)

(6) Was Mr. Lockley's negligence, if any, a cause in whole or in part of his injuries?

___✔___ Yes ___ No

(If your answer is "yes" go on to question no. 7, if your answer is "no", go on to question no. 8.)

(7) What percentage of negligence do you fund against the defendant and the plaintiff? (The total must be 100 percent and you are not to apply these percentages in response to question no. 8. The court will do so after you have announced your verdict.)

78% CSX Transportation 22% Albert Lockley

460

(8) State the total amount of damages to be awarded to the plaintiff. This amount is to be entered as a single lump-sum number.

$2,000,000

/s/Janice Y. M. Crossin          5/2/08

Foreperson's Signature        Dated