J. A11010/15

2015 PA Super 223

ROBERT DUBOSE, ADMINISTRATOR OF : IN THE SUPERIOR COURT OF
THE ESTATE OF ELISE DUBOSE, : PENNSYLVANIA
DECEASED :
:
:
v. :
:
MARK QUINLAN, DONNA BROWN, :
RNC, BSN, ALBERT EINSTEIN MEDICAL :
CENTER D/B/A WILLOWCREST, :
WILLOWCREST AND JEFFERSON :
HEALTH SYSTEM :
:
APPEAL OF:  WILLOWCREST NURSING :
HOME, ALBERT EINSTEIN :
HEALTHCARE NETWORK, ALBERT :
EINSTEIN MEDICAL CENTER D/B/A :
WILLOWCREST AND WILLOWCREST :          No. 2752 EDA 2013
:
Appellants :

Appeal from the Judgment Entered August 21, 2013,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. September Term, 2009 No. 0846

ROBERT DUBOSE, ADMINISTRATOR OF : IN THE SUPERIOR COURT OF
THE ESTATE OF ELISE DUBOSE, : PENNSYLVANIA
DECEASED :
:
:
v. :
:
WILLOWCREST NURSING HOME, AND :
ALBERT EINSTEIN HEALTHCARE :
NETWORK, :          No. 2753 EDA 2013
:
Appellants :

Appeal from the Judgment Entered August 21, 2013,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. August Term, 2009 No. 1603

J. A11010/15

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:                **FILED OCTOBER 23, 2015**

Appellants appeal the judgments entered August 21, 2013, in this wrongful death and survival action.  We affirm.

The trial court has aptly summarized the history of this matter as follows:

> Plaintiff, Robert Dubose, Administrator of the Estate of Elise Dubose, filed this nursing home liability action against Defendants, Willowcrest Nursing Home, and Albert Einstein Healthcare Network, under the lead case August Term, 2009, No. 1603.  Subsequently, Plaintiff filed a second action, September Term, 2009, No. 846 against Willowcrest, Albert Einstein Medical Center d/b/a Willowcrest, Mark Quinlan (Medical Director of Willowcrest) Donna Brown (Willowcrest Director of Nursing) and Jefferson Health System, which was consolidated under the Court Term and Number of the lead case.  Plaintiff alleged that Ms. Dubose developed severe pressure ulcers which were left untreated leading to a painful and gruesome death due to neglect and deterioration of said ulcers. Defendants argued that at a certain point said bedsores were untreatable.  The instant case went to trial twice.
>
> Plaintiff's decedent, Elise Dubose, was originally admitted to Albert Einstein Medical Center on July 25, 2005 when she suffered severe head injuries, including anoxia and brain injury as a result of a fall at home.  Not long thereafter, in August, 2005 she was transferred and admitted to Willowcrest Nursing Home where she was diagnosed inter alia with diabetes type II, respiratory failure necessitating a ventilator, COPD, and several

- 2 -

Stage II pressure ulcers (bed sores). On September 6, 2005 there was a physician's order for a flexor bed and frequent repositioning of the patient who was unable to care for herself, on a one to two hour cycle. Plaintiff's counsel presented evidence at trial that the physician's order was negligently followed, leading to a marked deterioration of existing bed sores, and proliferation of pressure ulcers to other parts of Mrs. Dubose's body including her shin, heels, so that there were at least 10 pressure ulcers existing at the time of her death on October 18, 2007.

During her stay at Willowcrest, Mrs. Dubose was malnourished, suffered severe dehydration, conscious pain from bed sores, bone infection, and sepsis systemic infection that lead ultimately to organ failure and death.

Plaintiff's liability claims were predicated at trial based on allegations and evidence presented that Defendants failed to adequately treat bed sores, failed to provide wound care within the standard of care, failed to adequately hydrate the patient, failed to guard against infection, and gave nursing and medical care that was below standard and negligent.

In October, 2012, there was [a] mistrial resulting from testimony by Plaintiff's expert in violation of a preclusion of evidence Order.

A second jury trial was held from February to March 2013. On March 5, 2013, the Court granted Defendant Jefferson Health System's Motion for Non-Suit because Jefferson Health System existed only as a fundraising entity, whose sole function was to issue bonds, and which did not engage in any of the four bases for corporate liability under the Thompson v. Nason Hospital, 527 Pa. 330[,] 591 A.2d 703 (Pa. 1991) line of cases.

On March 13, 2013, a jury found in favor of Plaintiff in the amount of $125,000, on the Wrongful Death Claim and $1,000,000.00 on the Survival

Action. The jury verdict sheet apportioned liability as 60% to Willowcrest, 25% to Albert Einstein Healthcare Network, and 15% to Donna Brown, the Willowcrest Director of Nursing.

The trial was bifurcated to include a punitive damages phase in which, on March 21, 2013, the same jury found punitive damages in the amount of $875,000.00 against Defendants, Albert Einstein Medical Center d/b/a Willowcrest. (N.T. 3-21-13 at 50-51).

Defendants filed Post Trial Motions on March 25, 2013, to which Plaintiff responded. On August 21, 2013, upon consideration of the Motion for Post-Trial Relief of Defendants Willowcrest Nursing Home, Albert Einstein Healthcare Network, Donna Brown, R.N.C., B.S.N., Albert Einstein Medical Center d/b/a Willowcrest and Willowcrest, Plaintiff's Response thereto, and upon hearing oral argument thereon, the trial Court granted Defendants' Motions in part, and denied them in part. The Court denied Defendants' Motion for a New Trial. The Post Trial Motion for Judgment N.O.V. was granted as to Defendant, Donna Brown, R.N.C., B.S.N., without a reduction in the total verdict amount, because she was an employee of Willowcrest. Defendants' Motion for Judgment N.O.V. was denied in all other respects as to all other remaining Defendants and issues. Defendants' Motion for Remittitur was denied in in [sic] its entirety as to both compensatory and punitive damages. Judgment was entered on the Verdict.

Trial court opinion, 6/27/14 at 1-3.

This timely appeal followed. Appellants have complied with Pa.R.A.P. 1925(b), and the trial court has filed an opinion.

Appellants have raised the following issues for this court's review:

A. Are [appellants] entitled to judgment n.o.v. where the Survival Act claim was clearly

- 4 -

time-barred, and there were no recoverable Wrongful Death Act damages?

B. Are [appellants] entitled to judgment n.o.v. on punitive damages, where this case did not involve any of the types of conduct that have been held to support punitive damages?

C. Are [appellants] entitled to judgment n.o.v. on Plaintiff's corporate negligence claims, or alternatively, a new trial, where Plaintiff failed to prove the elements of a corporate negligence claim?

D. Are [appellants] entitled to a new trial because the verdicts were excessive, and because the jurors were wrongly allowed to hear evidence of [appellants'] "wealth" before the jury decided whether to impose punitive damages?

E. Did the trial court commit reversible error by awarding delay damages even though Plaintiff's request was untimely?

Appellants' brief at 4.

When reviewing the propriety of an order granting or denying judgment notwithstanding the verdict, we must determine whether there is sufficient competent evidence to sustain the verdict. *Johnson v. Hyundai Motor America*, 698 A.2d 631, 635 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998) (citations omitted); *Rowinsky v. Sperling*, 452 Pa.Super. 215, 681 A.2d 785, 788 (1996), *appeal denied*, 547 Pa. 738, 690 A.2d 237 (1997) (quoting *Samuel Rappaport Family Partnership v. Meridian Bank*, 441 Pa.Super. 194, 657 A.2d 17, 20 (1995)). We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Johnson*, *supra* at 635; *Rowinsky*, *supra* at 788. We apply this standard in

all cases challenging the grant of a motion for J.N.O.V. **Shearer v. Reed**, 286 Pa.Super. 188, 428 A.2d 635, 637 (1981).

Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. **Johnson**, **supra** at 635; **Rowinsky**, **supra** at 788. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. **Commonwealth, Department of Transportation v. Patton**, 546 Pa. 562, 568, 686 A.2d 1302, 1305 (1997); **Miller v. Brass Rail Tavern, Inc.**, 702 A.2d 1072, 1076 (Pa.Super.1997) (citation omitted). This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned. **Id.**

**Birth Center v. St. Paul Companies, Inc.**, 727 A.2d 1144, 1154-1155 (Pa.Super. 1999).

First, appellants claim that the survival action was filed beyond the statute of limitations. According to appellants, the statute began to run in 2005, when Mrs. Dubose developed a pressure wound. (Appellants' brief at 14.) Appellants are mistaken. The MCARE Act[1] clearly provides that wrongful death and survival actions may be brought within two years of death.[2] Mrs. Dubose died on October 18, 2007, and the plaintiff filed two

---

[1] Medical Care Availability and Reduction of Error ("MCARE") Act, 40 P.S. § 1303.101 **et seq.**

[2] **§ 1303.513. Statute of repose**

(d) **Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival

- 6 -

complaints, one in August 2009, and one in September 2009, which were ultimately consolidated. Both were filed within two years of the decedent's death. Therefore, the Survival Act claim was timely filed within the two-year statute of limitations.

Appellants also complain that the plaintiff was allowed to add new causes of action in his amended complaints, outside the statute of limitations. (Appellants' brief at 21.) This claim was not raised in appellants' Rule 1925(b) statement, nor was it addressed by the trial court. Therefore, it is waived. Pa.R.A.P. 1925(b)(4)(vii); *Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 463-464 (Pa.Super. 2007), *appeal denied*, 937 A.2d 446 (Pa. 2007) (citations omitted).

Next, appellants argue that the plaintiff failed to establish compensable damages for wrongful death. According to appellants, damages under the Wrongful Death Act are strictly limited to pecuniary losses. (Appellants' brief at 24.) Appellants contend that wrongful death does not encompass damages for emotional loss or mental pain and suffering. (*Id.* at 25.)

> Pennsylvania's Wrongful Death Act, 42 Pa.Cons.Stat.Ann. § 8301, allows a spouse,

---

> action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

40 Pa.C.S.A. § 1305.513(d).

children or parents of a deceased to sue another for a wrongful or neglectful act that led to the death of the deceased. This Court has previously explained the damages available under the Wrongful Death Act:

> "Damages for wrongful death are the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death." ***Slaseman v. Myers***, 309 Pa.Super. 537, 455 A.2d 1213, 1218 (1983). Thus, members of the decedent's family enumerated in the Wrongful Death Act, ***see*** 42 Pa.C.S. § 8301(b), may recover not only for medical, funeral, and estate administration expenses they incur, but also for the value of his services, including society and comfort. ***See id. See also Machado v. Kunkel***, 804 A.2d 1238, 1245 (Pa.Super.2002) ("[T]he definition of compensable services for the purpose of the [wrongful] death statute is similar to the definition of consortium as that term is applied in other negligence cases.").

***Rettger v. UPMC Shadyside***, 991 A.2d 915, 932-933 (Pa.Super.2010), ***appeal denied***, 609 Pa. 698, 15 A.3d 491 (2011). Our Court has unequivocally stated that:

> The purpose of the Wrongful Death Statute, 42 Pa.C.S. § 8301, is to compensate "the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. . . . This includes the value of the services the victim would have rendered to his family if he had lived." . . . A wrongful death action does not compensate the decedent; it compensates the survivors for damages which they have sustained as a result of the decedent's death.

> Under the wrongful death act the widow or family is entitled, in addition to costs, to compensation for the loss of the contributions decedent would have made for such items as shelter, food, clothing, medical care, education, entertainment, gifts and recreation.
>
> ***Machado v. Kunkel***, 804 A.2d 1238, 1245-1246 (Pa.Super.2002), ***appeal denied***, 572 Pa. 766, 819 A.2d 547 (2003) (citations omitted), quoting ***Linebaugh v. Lehr***, 351 Pa.Super. 135, 505 A.2d 303, 304–305, (1986).

***Hatwood v. HUP***, 55 A.3d 1229, 1235-1236 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 414 (Pa. 2013).  The appellants in ***Hatwood*** made the identical argument, contending that,

> due to the inherent uncertainty involved in such determinations, no recovery for non-pecuniary losses such as for society and companionship is permissible under the Act.  However, the Supreme Court of Pennsylvania has addressed this issue of "uncertainty" by holding that
>
>> [t]he fact that there is no mathematical formula whereby compassionately bestowed benefits can be converted into a precise number of bank notes does not mean that the tortfeasor will be excused from making suitable reimbursement for their loss. . . . All these things—such as companionship, comfort, society, guidance, solace, and protection which go into the vase of family happiness-are the things for which a wrongdoer must pay when he shatters the vase.
>
> ***Spangler v. Helm's New York-Pittsburgh Motor Exp.***, 396 Pa. 482, 484-485, 153 A.2d 490, 492 (1959).

*Id.* at 1236. In the instant case, the plaintiff introduced evidence that, although Mrs. Dubose was suffering from severe brain damage, her family were deprived of her society and comfort. Mrs. Dubose was responsive to music and a photograph of her grandchild. (Trial court opinion, 6/27/14 at 12.) The decedent's family derived comfort and solace from the fact that she was still alive and being able to visit her in the nursing home. (*Id.*) In addition, the plaintiff presented evidence that the estate incurred funeral and other expenses as a result of Mrs. Dubose's death. (*Id.*) The jury's damages award of $125,000 for wrongful death was supported by the evidence and appellants' argument is without merit.

Next, appellants argue that the evidence was insufficient to prove punitive damages. Appellants contend that even accepting the plaintiff's evidence as true, the plaintiff failed to prove reckless indifference or outrageous conduct necessary to support punitive damages. Appellants state that, at most, the plaintiff proved ordinary negligence. We disagree.

> Punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

> *J.J. DeLuca Co., Inc. v. Toll Naval Associates*, --- Pa.Super. ---, 56 A.3d 402 (2012) (citation omitted).

> Outrageous conduct is an "act done with a bad motive or with a reckless indifference to the interests of others." "Reckless indifference to the interests of others", or as it is sometimes referred to, "wanton misconduct", means that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."

> **Smith v. Brown**, 283 Pa.Super. 116, 423 A.2d 743, 745 (1980) (citations omitted).

> [I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

> **Snead v. Soc'y for Prevention of Cruelty to Animals of Pennsylvania**, 929 A.2d 1169, 1184-85 (Pa.Super.2007), **aff'd**, 604 Pa. 166, 985 A.2d 909 (2009) (citing **Hutchison ex rel. Hutchison v. Luddy**, 896 A.2d 1260, 1266 (Pa.Super.2006)).

**Weston v. Northampton Personal Care, Inc.**, 62 A.3d 947, 961 (Pa.Super. 2013), **appeal denied**, 79 A.3d 1099 (Pa. 2013). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused." **Id.**, citing **J.J. DeLuca Co.**, **supra**.

We agree with the trial court that where the plaintiff established the reckless neglect of the nursing home resident, Mrs. Dubose, leading to the development of numerous festering bedsores, the matter of punitive damages was for the jury to decide. (Trial court opinion, 6/27/14 at 14.) As described above, nursing home staff negligently followed a physician's order to frequently reposition the decedent on a 1-2 hour cycle, leading to a marked deterioration of existing bedsores. (*Id.* at 2.) During her stay at Willowcrest, there was evidence that the decedent was malnourished, dehydrated, and suffered conscious pain from numerous bedsores. (*Id.*) In addition, appellants used a licensed practical nurse to provide advanced wound care in violation of the Nurse Practices Act.[3] At the time of her death on October 18, 2007, the decedent suffered from at least 10 pressure ulcers as well as systemic infection. In September 2007, the decedent was hospitalized for acute renal failure caused by severe dehydration. Our standard of review requires that we view the evidence in the light most favorable to the plaintiff, the verdict winner. There was sufficient evidence of substandard care to the point of reckless indifference for the issue of punitive damages to go to the jury. The trial court did not err in denying

---

[3] 63 P.S. § 211 *et seq.*

appellants' motion for judgment NOV with regard to imposition of punitive damages.[4]

Next, appellants argue that they were entitled to judgment NOV on the corporate negligence claim. Appellants argue that the plaintiff failed to establish all the elements of corporate negligence, including breach of a duty and causation. (Appellants' brief at 34.) Appellants complain that the plaintiff failed to distinguish between the several corporate defendants and that the plaintiff's expert, David Lopez ("Lopez"), was not a nursing home administrator and had no medical training. (*Id.* at 34-36.)

> Corporate negligence as a basis for liability against a hospital was first adopted by our Supreme Court in *Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991). As we recently observed in *Hyrcza v. West Penn Allegheny Health System, Inc.*, 978 A.2d 961, 982 (Pa.Super.2009):
>
>> In *Thompson*, the Court found that a hospital could owe a non-delegable duty to uphold a certain standard of care directly to its patients, without requiring an injured party to establish the negligence of a third party. The basis for imposing direct liability on hospitals, as recognized by the Court, was that hospitals had "evolved into highly sophisticated corporations operating primarily on a fee-for-service basis. The

---

[4] Citing the MCARE Act, 40 P.S. § 1303.505(c), appellants also argue that they cannot be held liable for the actions of their agents unless they actually knew of and allowed the conduct by their agents that resulted in the award of punitive damages. Appellants argue that the plaintiff would have to show actual knowledge of wrongful conduct. (Appellants' brief at 32.) However, Section 1303.505(c) only applies to vicarious liability. Here, appellants were also found directly liable under a corporate negligence theory of liability.

corporate hospital of today has assumed the role of a comprehensive health center with responsibility for arranging and coordinating the total health care of its patients." [**Thompson**, **supra**,] at 706.

In **Thompson**, the Court held that a hospital owes the following duties to its patients: (a) to use reasonable care in the maintenance of safe and adequate facilities and equipment; (b) to select and retain only competent physicians; (c) to oversee all persons who practice medicine within its walls as to patient care; and (d) to formulate, adopt and enforce adequate rules and policies to ensure quality care for its patients. [**Thompson**, **supra**,] at 707. The Court held that in order for a hospital to be charged with negligence, it was necessary to show that it had "actual or constructive knowledge of the defect or procedures which created the harm" and that the hospital's negligence was "a substantial factor in bringing about the harm to the injured party." [**Thompson**, **supra**,] at 708.

**Scampone v. Grane Healthcare Co.**, 11 A.3d 967, 974-975 (Pa.Super. 2010), **affirmed in part on other grounds**, 57 A.3d 582 (Pa. 2012). In **Scampone**, this court held that the trial court correctly concluded a nursing home could likewise be found liable under a corporate negligence theory:

Herein, we conclude that a nursing home is analogous to a hospital in the level of its involvement in a patient's overall health care. Except for the hiring of doctors, a nursing home provides comprehensive and continual physical care for its patients. A nursing home is akin to a hospital rather than a physician's office, and the doctrine of corporate liability was appropriately applied in this case.

**Id.** at 976.

As in this case, in **Scampone**, there was evidence that the management company knew staffing levels were insufficient to meet patients' needs. **Id.** at 990. The decedent in that case died from chronic substandard care resulting in a urinary tract infection, dehydration, and malnutrition. This court in **Scampone** found that the management company's employees supervised the nursing staff and were involved in the daily care of the decedent. **Id.** The management company's employees failed to supervise the staff properly and ensure that the decedent had proper fluids, nourishment, etc. **Id.** The **Scampone** court found that the management company "had a direct supervisory role" and "actually controlled the care." **Id.**

Lopez is President and CEO of the Harris Health System in Houston, Texas, and was qualified as an expert. Lopez testified that Albert Einstein Healthcare Network was responsible for knowing and understanding what its staffing ratios were, what its quality assurance plan was, and addressing all issues present within the entities that it operated. (Notes of testimony, 3/4/13 at 126-127.) Lopez testified that, in his expert opinion, Albert Einstein Healthcare Network was not meeting its responsibilities to assure that care was being provided to the general patient population at Willowcrest. (**Id.** at 127-128.) Albert Einstein Healthcare Network received a management fee from Willowcrest for its oversight and management of the facility.

In addition, there was expert testimony that Mrs. Dubose died as the result of failure to enforce policies and procedures at Willowcrest and the violation of state regulations and federal standards pertaining to nursing homes. As stated above, Willowcrest and Albert Einstein Healthcare Network violated the Nurse Practices Act by allowing LPNs to perform wound assessments. The Chief Nurse Executive in charge of Willowcrest was placed by Albert Einstein Healthcare Network and knew or should have known that LPNs were preparing skin care assessment forms in violation of state law. In addition, there was evidence of chronic understaffing in violation of appellants' duty to provide the nursing home residents with competent nursing staff. There was sufficient evidence to find appellants corporately liable, and the trial court did not err in denying appellants' motion for judgment NOV with regard to corporate liability.

Next, appellants make several arguments relating to the admission of evidence. Appellants argue that the trial court erred in granting the plaintiff's motion *in limine* to preclude the admission of Willowcrest records indicating that Mrs. Dubose's daughter, Starr Dubose ("Starr"), was upset regarding her mother's care. Appellants also argue that they should have been allowed to present evidence that the plaintiff had already retained an attorney in 2005, and was contemplating legal action against Willowcrest at that time. (Appellants' brief at 39-41.)

When reviewing a trial court's ruling on a motion *in limine*, we apply the same standards relevant to the particular evidentiary issue under consideration. *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 913-914 (Pa.Super. 2007), *appeal dismissed as improvidently granted*, 971 A.2d 1228 (Pa. 2009). "The admission or exclusion of evidence is a decision subject to the discretion of the trial court whose decision will not be disturbed absent a clear abuse of that discretion, or an error of law." *Id.* at 914 (citation omitted).[5] Further, "[i]n order to find that the trial court's evidentiary rulings constituted *reversible error*, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Whitaker v. Frankford Hosp. of City of Philadelphia*, 984 A.2d 512, 522 (Pa.Super. 2009) (internal quotation marks and citation omitted) (emphasis supplied). Thus, the complaining party must prove prejudice.

It is axiomatic that all relevant evidence is admissible at trial. Pa.R.E. 402. The Pennsylvania Rules of Evidence define "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

---

[5]   An abuse of discretion occurs when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.

*Hyrcza*, 978 A.2d at 968 (internal quotation marks and citations omitted).

probable than it would be without the evidence. Pa.R.E. 401. However, a trial judge has the discretion to exclude relevant evidence if, *inter alia*, its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Pa.R.E. 403.

Appellants complain that they were precluded from introducing evidence that Starr was "acting out" and mistreating the nursing home staff because she believed that her mother was receiving substandard care. Specifically, according to Willowcrest records from September 2005, Starr was yelling and screaming that, "my mother did not have any wounds before she came to Willowcrest," demanding that her mother be discharged home, and questioning the nurses about the status of her mother's wounds. (Appellants' brief at 40.) One nurse described Starr as being enraged, stating, "I can't stand this place. I'm gonna kick her ass." (*Id.*)

As the trial court states, this evidence was hearsay and also irrelevant, apparently proffered for the purpose of casting Starr in an unflattering light. (Trial court opinion, 6/27/14 at 18.) Appellants argue the evidence was relevant to their statute of limitations defense; *i.e.*, as early as September 2005, the decedent's family were aware of her pressure ulcers and voicing complaints about the care provided by Willowcrest staff, yet waited four years before filing suit. (Appellants' brief at 40.) For the reasons discussed *supra*, we have already rejected appellants' statute of limitations argument. The plaintiff's complaint was filed within two years after Mrs. Dubose's

death, before expiration of the relevant limitations period. Therefore, appellants cannot demonstrate how they were prejudiced by exclusion of the evidence.

In the same vein, appellants' argument regarding the plaintiff's alleged retention of an attorney in 2005 also fails. Again, appellants argue that this evidence was relevant to show that four years before these lawsuits were filed, the plaintiff possessed the salient facts concerning the occurrence of the injury and who or what caused it, and was relevant to counter any "discovery rule" argument. (*Id.* at 41.) However, since the statute did not begin to run until Mrs. Dubose's death in October 2007, the suit was timely filed and the plaintiff does not have to revert to application of the discovery rule to toll the limitations period. The evidence concerning the plaintiff's retention of an attorney was both irrelevant and prejudicial. The trial court did not err in granting the plaintiff's motion **in limine** to exclude this evidence.

Next, appellants argue that the compensatory verdicts were shockingly excessive. Appellants argue that Mrs. Dubose had pre-existing medical conditions, had suffered severe brain damage, and was never going to recover neurological function. Appellants argue that there was no indication Mrs. Dubose could feel pain and that she had suffered permanent brain damage before she arrived at Willowcrest, after a fall at her home in July 2005. (Appellants' brief at 44-45.)

Judicial reduction of a jury award for compensatory damages is appropriate only when the award is plainly excessive and exorbitant in a particular case. *Haines v. Raven Arms*, 536 Pa. 452, 456, 640 A.2d 367, 369 (1994) (reconsideration granted and case remanded June 7, 1994). It is well-settled that the large size of a verdict is in itself no evidence of excessiveness. *Layman v. Doernte*, 405 Pa. 355, 363, 175 A.2d 530, 534 (1962). [] The correct question on review is whether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Haines v. Raven Arms*, *supra* (citing *Carminati v. Philadelphia Transportation Co.*, 405 Pa. 500, 509, 176 A.2d 440, 445 (1962)).

The trial court may only grant a request for remittitur when a verdict that is supported by the evidence suggests that a jury was guided by partiality, prejudice, mistake or corruption. *Krysmalski by Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 147, 622 A.2d 298, 312 (*en banc*), *appeal denied*, 535 Pa. 675, 636 A.2d 634 (1993). The grant or refusal of either a new trial or remittitur because of the excessiveness of the verdict is peculiarly within the discretion of the trial court and will not be reversed unless an abuse of discretion or error of law has been committed. *Haines v. Raven Arms*, *supra* (quoting *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 290, 285 A.2d 451, 456-57 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972)). On appeal, the Superior Court is not free to substitute its judgment for that of the fact finder. *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 166, 611 A.2d 1174, 1176 (1992). Rather, it is our task to determine whether the lower court committed a "clear" or "gross" abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur. *Id.* at 165, 611 A.2d at 1176.

*Sprague v. Walter*, 656 A.2d 890, 924 (Pa.Super. 1995), *appeal denied*, 670 A.2d 142 (Pa. 1996).  With regard to the $125,000 Wrongful Death Act verdict, appellants repeat their claim that the plaintiff failed to prove the elements for a wrongful death recovery.  (Appellants' brief at 42.)  We have already rejected this argument for the reasons discussed above.  Appellants also complain that the jury's $1,000,000 Survival Act verdict was shockingly excessive in light of the decedent's pre-existing injuries and lack of brain function.  However, while Mrs. Dubose may have arrived at Willowcrest with pre-existing injuries, she developed the festering bedsores which ultimately led to her demise while a patient at Willowcrest.  In addition, there was testimony that she suffered from severe dehydration and lack of nutrition.  While appellants argue that Mrs. Dubose was basically in a vegetative state and discount the plaintiff's testimony that Mrs. Dubose was able to interact with him non-verbally, including moving her hands and watching television, matters of credibility are for the jury, and they are free to believe all, part, or none of the evidence presented.  The fact that Mrs. Dubose had suffered permanent, debilitating brain injury does not mean that she was physiologically incapable of feeling pain.  The plaintiff points out that at some point Mrs. Dubose required pain medication and was placed on a pain management program.  (Appellee's brief at 49.)  Essentially, appellants are making a quality of life argument, asserting that the decedent's pain and suffering should be discounted because of her decreased mental functioning

and poor prognosis. We find the jury's compensatory award was not shockingly excessive and the trial court did not abuse its discretion in denying appellants' motion for remittitur or a new trial.

Next, appellants make several claims of trial court error with respect to the punitive damages phase of trial. The damages phase was bifurcated, at appellants' request, into separate compensatory and punitive damages phases. (Trial court opinion, 6/27/14 at 13.) By granting appellants' motion for a bifurcated trial as to damages, evidence of appellants' wealth was deferred until after liability and resulting compensatory damages had been found and awarded by the jury. (*Id.*) Therefore, the trial court severed the issue of appellants' wealth from the initial damages calculations. (*Id.*) *See Mirabel v. Morales*, 57 A.3d 144, 151 n.7 (Pa.Super. 2012) ("In the absence of punitive damages, it is 'irrelevant, improper, and prejudicial' for a jury to consider the defendant's wealth."), quoting *Feld v. Merriam*, 485 A.2d 742, 749 (Pa. 1984).

However, appellants argue the trial court should have further bifurcated the punitive damages phase of trial, by not allowing any evidence of appellants' considerable wealth until after the jury had decided whether to award punitive damages in the first place. Appellants argue that wealth of a defendant is a proper consideration as to the amount of punitive damages to be awarded, but it is irrelevant to the determination of liability. (Appellants' brief at 48.) Notably, appellants cite no authority for the proposition that

the trial court was required to further bifurcate the punitive damages phase of trial to prevent the jury from hearing any evidence of appellants' wealth unless and until they decided to impose punitive damages. *See Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989), citing Restatement (Second) of Torts, Section 908(2) (wealth of the defendant is one factor for the jury to weigh in arriving at an appropriate punitive damage award).

Appellants cite *Vance v. 46 and 2, Inc.*, 920 A.2d 202 (Pa.Super. 2007), which is inapposite. In that case, the defendants' sole issue on appeal was that the trial court erred by denying their motion for nonsuit or judgment NOV on the punitive damages issue, where the plaintiffs failed to present any evidence of the defendants' finances or wealth at trial. *Id.* at 203. This court concluded that, while wealth of the tortfeasor is a relevant consideration, it is not a necessary condition precedent for imposition of an award of punitive damages. *Id.* at 207, citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 215 (Pa.Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2004) ("evidence of wealth is not mandatory to establish a claim for punitive damages"). This is a far cry from holding, as appellants suggest, that a jury is not permitted to consider a defendant's wealth until they first determine that punitive damages should be imposed.

Furthermore, appellants cannot show how they were prejudiced where the jury's punitive damages award was less than the compensatory damages

award. The amount of punitive damages bore a reasonable relationship to the award of compensatory damages (less than a 1:1 ratio), and there is no indication that the jury was unfairly biased against appellants because of their substantial wealth.

Appellants also claim that the trial court should have given a curative instruction, instructing the jury that they were not to consider evidence of appellants' wealth when determining whether appellants were liable for punitive damages. (Appellants' brief at 50.) Appellants argue that the failure to give the requested instruction "compounded the error in failing to bifurcate the issue of wealth from the issue of liability for punitive damages. . . ." (*Id.* at 51.) This issue fails for the same reasons. Again, appellants cite no authority for the proposition that the trial court was required to bifurcate the punitive damages phase of trial in this manner, or that such a "curative instruction" was warranted.

Appellants also argue that the trial court erred in refusing to give an instruction pursuant to Pa.SSJI (Civ.) § 8.30, that punitive damages cannot be awarded in a wrongful death action. (Appellants' brief at 52.) Appellants cite **Harvey v. Hassinger**, 461 A.2d 814, 815-816 (Pa.Super. 1983), in which this court remarked,

> The question as to whether punitive damages are permitted in a wrongful death action is set to rest in **Pennsylvania Railroad Company v. Henderson**, 51 Pa. 315, 323 (1865) wherein it is stated that damages recoverable under Lord Campbell's Act, the forerunner of Pennsylvania's Wrongful Death Act do

> "not include the loss or suffering of the deceased, nor does it include the mental suffering of the survivor occasioned by such death, and it excludes all questions of exemplary damages." (Emphasis added).

The **Harvey** court emphasized that the Wrongful Death Act permits only pecuniary losses which the plaintiffs have suffered from the death of their relative. **Id.** Frankly, the continued viability of this aspect of **Harvey** and Section 8.30 of the Suggested Standard Jury Instructions can fairly be called into question given the holding in **Hatwood v. HUP**, **supra**, 55 A.3d at 1236 (finding trial court did not err in instructing the jury in a wrongful death action that, **inter alia**, "In addition to the monetary contributions that the decedent would have contributed to the family support, the plaintiffs are entitled to be [] awarded a sum that will fairly and adequately compensate the family for the monetary value of the companionship, society, and comfort that [the decedent] would have given to his family had he lived. . . ."). At any rate, this was a Wrongful Death and Survival Action, and there is no dispute that punitive damages may be awarded under the Survival Act. Furthermore, appellants cannot demonstrate prejudice where there is no indication the jury's verdict on punitive damages was influenced by bias or hostility against large corporations such as appellants. The jury's punitive damages award was amply supported by the evidence and bore a reasonable relationship to compensatory damages. There is no merit here.

Finally, appellants contend that the trial court erred in awarding delay damages where the plaintiff's Rule 238 motion was untimely filed. Pennsylvania Rule of Civil Procedure 238 provides, in relevant part, as follows:

> (a)(1)  At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa.C.S. § 7361, and shall become part of the verdict, decision or award.

> (c)  Not later than ten days after the verdict or notice of the decision, the plaintiff may file a written motion requesting damages for delay and setting forth the computation.

Pa.R.C.P., Rule 238(a)(1), (c), 42 Pa.C.S.A.

Instantly, the jury reached a verdict on compensatory damages on March 13, 2013, and a verdict on punitive damages on March 21, 2013. As the trial court states, per appellants' request for bifurcation, the trial did not end until March 21, 2013, when the jury reached a punitive damage award. (Trial court opinion, 6/27/14 at 19.) The jury verdict for the plaintiff was not entered on the trial court docket until March 22, 2013. The plaintiff filed the motion for delay damages on March 28, 2013, within ten days of the docketing of the jury's verdict. Therefore, it was timely under Rule 238(c).

Appellants argue that the Rule 238 motion had to be filed within ten days after the jury's March 13, 2013 compensatory damages award because delay damages may not be awarded on punitive damages. ***See Colodonato v. Consolidated Rail Corp.***, 470 A.2d 475 (Pa. 1983) (punitive damages must be excluded from the computation of delay damages). Appellants have cited no binding legal authority for such a proposition, nor is this court aware of any. In their reply brief, appellants note that in a memorandum decision of this court, the plaintiff filed his motion for delay damages within ten days after the compensatory damages award, and before the punitive phase had begun. (Appellants' reply brief at 27-28.)[6] This appears to have been nothing more than part of the procedural history of the case and played no part in the decision. Here, the plaintiff filed his Rule 238 motion for delay damages within ten days after entry of the verdict as required by Rule 238(c).

Finally, appellants complain that Rule 238 delay damages do not apply to wrongful death recoveries. The trial court states that it awarded delay damages in accord with appellants' own calculations; and furthermore, that there is no exclusion of delay damages for wrongful death actions under

---

[6] ***Blango v. Jeanes Hospital, Inc.***, 87 A.3d 871 (Pa.Super. 2013) (unpublished memorandum). Appellee also cites to ***Blango*** in his brief on appeal. (Appellee's brief at 31.) We caution the parties that, pursuant to this court's internal operating procedures, "An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding," subject to certain limited exceptions not relevant here. Pa.Super.Ct. IOP 65.37(A).

Rule 238. (Trial court opinion, 6/27/14 at 20.) Appellants cite two cases in support, both of which are inapposite. (Appellants' brief at 55 n.10.) *See Goldberg ex rel. Goldberg v. Isdaner*, 780 A.2d 654 (Pa.Super. 2001), *appeal denied*, 820 A.2d 705 (Pa. 2003) (Rule 238 does not provide for delay damages to be awarded where the underlying claim is for reimbursement of medical expenses); and *Anchorstar v. Mack Trucks, Inc.*, 620 A.2d 1120 (Pa. 1993) (no delay damages for loss of consortium claim). *Cf. Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1 (Pa.Super. 2003) (affirming order imposing delay damages in wrongful death action). The trial court did not err in awarding delay damages of $107,805.92 for the plaintiff.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2015