J-A20031-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

ROGER WEIMER : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
UPMC SOMERSET HOSPITAL AND : No. 151 WDA 2020
HAI TSAO, M.D. :

Appeal from the Order Entered January 3, 2020
in the Court of Common Pleas of Somerset County
Civil Division at No(s): 152 Civil 2019

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED NOVEMBER 30, 2020

Roger Weimer ("Weimer") appeals from the Order sustaining the Preliminary Objections filed by UPMC Somerset Hospital (the "Hospital") and Hai Tsao, M.D. ("Dr. Tsao") (collectively, "Defendants"), and dismissing Weimer's Complaint with prejudice. We affirm.

On March 14, 2017, police officers notified Weimer of the suicide of his ex-wife, with whom he lived. The officer responding to the scene, Officer Mark Kasterko ("Officer Kasterko"), wrote the following, in an Application for Involuntary Emergency Examination and Treatment pursuant to Section 302 of the Mental Health Procedures Act ("MHPA")[1] ("the Section 302

_____

[1] See 50 P.S. § 7302.

Application"):  "Weimer had an episode and became violent and attempted to get to a firearm.  After a struggle[,] he insisted on [sic] he was going to kill himself.  During the trip to the hospital he was calm."  Section 302 Application, 3/17/17, at 3.

Upon Weimer's arrival at the Hospital, Dr. Tsao examined Weimer.  In the Section 302 Application, Dr. Tsao described the "Results of the Examination" as follows:

> Patient is a 57-year-old male, initially referred from [Emergency Department] on [Section] 201 status after he grabbed his gun to shoot himself in front of police officers[,] who informed him of his [ex-]wife's suicide by jumping off a bridge.  This incident was preceded by re-emergent symptoms of depression after patient's discontinuance of anti-depressants prescribed by his [primary care physician], in midst of [an] inability to sustain his livelihood due to debilitating arthritic pain.
>
> As patient has sustained multiple significant severe losses, he remains at high risk of suicide, for which he remains in need of continued acute psychiatric hospitalization for crisis intervention and of disposition needs.

Id. at 7.  Dr. Tsao subsequently filed a Section 303[2] Application for Extended Involuntary Treatment ("the Section 303 Application"), which set forth the same information as provided in the Section 302 Application.  Following a hearing, the trial court entered an Order granting the Section 303 Application.  On that same date, however, Dr. Tsao released Weimer.

_____

[2]  See 50 P.S. § 703.

On April 26, 2019, Weimer filed a Complaint averring causes of action against Defendants for medical malpractice, false imprisonment, and punitive damages. Following the filing of Preliminary Objections, Weimer filed an Amended Complaint. The Amended Complaint again averred causes of action for medical malpractice and false imprisonment. Defendants filed Preliminary Objections in the nature of a demurrer. Following argument, the trial court entered an Order sustaining the Preliminary Objections and dismissing the Amended Complaint with prejudice. Thereafter, Weimer filed the instant timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Weimer presents the following claims for our review:

1. Should [] Weimer's claim for false imprisonment have been dismissed with prejudice?

2. Should Weimer's entire Complaint have been dismissed with prejudice pursuant to immunity of [Defendants]?

3. Should [] Weimer's claims for punitive damages have been dismissed with prejudice?

Brief for Appellant at 3 (issues renumbered).

When considering a trial court's order sustaining preliminary objections, the standard and scope of review we apply is as follows:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

- 3 -

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections[,] which seek the dismissal of a cause of action[,] should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc., 107 A.3d 114, 118 (Pa. Super. 2014) (citation omitted).

We will address Weimer's first two claims together, as they are related. Weimer first argues that the trial court improperly dismissed his claim for false imprisonment with prejudice.[3] Brief for Appellant at 8. Weimer argues that there are material issues in dispute related to the probable cause determination. Id. at 11. Weimer directs our attention to evidence that his

_____

[3] The elements of false imprisonment are

(1) the detention of another person, and (2) the unlawfulness of such detention. An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not. Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (internal citations and quotation marks omitted).

sister and family members requested his discharge; he never refused treatment; he never threatened to leave against medical advice; he cooperated with all examinations; Dr. Tsao refused to continue Weimer's medications for treatment of Meneire's disease; Weimer began to suffer from dizziness and hearing loss as a result of the discontinuance of his medications; and, when Weimer requested the opportunity to hire a private attorney, he was told he must use a public defender. Id. at 8-9.

Weimer further directs our attention to the discrepancy between Officer Kasterko's statement that Weimer had attempted to find a firearm, and Dr. Tsao's statement that Weimer had "grabbed his gun to shoot himself in front of the police officers[.]" Id. According to Weimer, this discrepancy "calls into question the existence of probable cause." Id. Weimer points out that four days after the hearing on the Section 303 Application, March 20, 2017, the trial court entered an Order committing Weimer for inpatient treatment. Id. at 10. However, Dr. Tsao released Weimer from treatment on that same day. Id. According to Weimer, "[t]he fact that [] Weimer was released by Dr. Tsao four days after the [Section] 303 hearing[] strongly suggests a lack of probable cause." Id.

In his second claim, Weimer argues that the trial court should not have dismissed his Complaint, in its entirety, pursuant to the immunity provisions of the MPHA. Brief for Appellant at 13. According to Weimer, Dr. Tsao's statement that Weimer had "grabbed [the officer's] gun to shoot himself in

front of the officers" is a gross exaggeration of Officer Kasterko's statement that Weimer had "attempted to get a firearm." Id. Weimer argues that, based on the cross-examination of Dr. Tsao at the Section 303 hearing, "[i]t cannot be said that the doctor was unaware of the allegation that he had embellished and exaggerated the statements of the police officers." Id. at 14.

Our review discloses that Weimer was involuntarily committed under the provisions of the MHPA. As this Court has recently explained,

> [u]nder 50 P.S. § 7302(a)(2), a person may be seized without a warrant and taken to a facility for an emergency examination if an officer personally observes "conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment…." Section 7301 states that "[a] person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or himself, as defined in subsection (b), or the person is determined to be in need of assisted outpatient treatment as defined in subsection (c)." 50 P.S. § 7301(a). A person presents a "clear and present danger" to himself or others if, within the past 30 days, he has shown that he cannot satisfy his own need for nourishment, personal or medical care, shelter, or safety; he has attempted or threatened suicide or there is a reasonable probability he will commit suicide; or he has mutilated himself or attempted or threatened to do so. 50 P.S. § 7301(b)(2)(i)-(iii).

Commonwealth v. Schneider, 2020 PA Super 218, at *20-21 (emphasis added).

Under its provisions, the MHPA additionally provides for immunity from civil liability, providing as follows:

§ 7114. Immunity from civil and criminal liability

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, … shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). Under the MHPA, a "facility" is "any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." 50 P.S. § 7103. "Treatment" is defined as "diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery." 50 P.S. § 7104.

Downey v. Crozer-Chester Med. Ctr., 817 A.2d 517, 524 (Pa. Super. 2003) (en banc).

Our Supreme Court has adopted the following definition of gross negligence:

It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

Albright v. Abington Mem'l Hosp., 696 A.2d 1159, 1164 (Pa. 1997) (citation and internal quotation marks omitted).

While it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of

fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence.

Id. at 1164-65.

Here, the trial court set forth the circumstances of Weimer's commitment under Sections 302 and 303, and applied the immunity provisions of the MHPA, as follows:

First, the report of police officers who interacted with [] Weimer. Initially, when they went to his home and had to inform him that his ex-wife, who, although she was his ex-wife[,] was still living with him, that she had committed suicide. And the statement of the police officers and the 302 Application For Involuntary Emergency Examination and Treatment, was that [] Weimer had an episode and became violent and attempted to get to a firearm. After a struggle[,] he insisted on [sic] he was going to kill himself. During the trip to the hospital[,] he was calm.

That is the statement of the police officers in the [Section] 302 [A]pplication.

Dr. Tsao's results of examination in the [Section] 302 [A]pplication under [P]art IV, entitled, "Physician's Examination," are as follows....

Dr. Tsao indicated, "Patient is a 57-year-old male, initially referred from ED" –which, I believe is the emergency department—"on [Section] 201 status after he grabbed his gun to shoot himself in front of police officers who informed him of his [ex-]wife's suicide by jumping off a bridge. This incident was preceded by re-emergent symptoms of depression after patient," ... "patient discontinuance of anti-depressants prescribed by his [primary care physician] in midst of inability to sustain his livelihood due to debilitating arthritic pain."

Those were Dr. Tsao's findings. And then below that, under the section entitled, "Treatment Needed," Dr. Tsao indicated, "As patient has sustained multiple significant and severe losses, he remains at high risk of suicide for which he remains in need of

continued acute psychiatric hospitalization for a crisis intervention, treatment, stabilization, followed by assessment of disposition needs.

So I do agree with [Defendants' counsel] that with respect to the claim of false imprisonment, that the facts clearly indicated that the police officers have probable cause to detain [] Weimer and transport him to the hospital.

Upon being brought to the hospital, then Dr. Tsao relied on the statements of the police officer in the [Section] 302 [A]pplication, as well as his own examination of [] Weimer. And that based on the statements of the police officer and his own independent examination, he made the determination in good faith that [] Weimer was a threat to either himself or others, and that he was in need of involuntary commitment and treatment.

The results of the examination as set forth by Dr. Tsao, [the court] acknowledge[s], are not verbatim or exactly what the police officer stated, but, frankly, [the court] find[s] that they do not differ all that much. And it certainly does not, in [the court's] opinion, rise to the level of willful misconduct or gross negligence.

The police officers reported that [] Weimer had an episode. He became violent. And he attempted to get to a firearm. He struggled with the police and he insisted he was going to kill himself.

Based on that, and [Dr. Tsao's] own examination, Dr. Tsao determined that [] Weimer had threatened to commit suicide. And, in fact, made an overt attempt to get to a firearm and commit suicide.

Coupled with that, [Dr. Tsao] also made the determination based on his examination that [] Weimer had also experienced other significant issues related to him discontinuing his anti-depressant medication that was prescribed by his primary care physician. And that he was going through a difficult time as a result of losing his livelihood due to debilitating arthritic pain.

Based on that examination, again, Dr. Tsao made the determination that involuntary treatment was appropriate.

\*     \*     \*

> So[,] in this case, … [the court is] mindful that we are at the preliminary objections stage[,] and not the summary judgment stage. However, [the court] finds that a reading of the [A]mended [C]omplaint and the exhibits that are part of the [A]mended [C]omplaint do not establish willful misconduct or gross negligence. And, at best, they may support a claim for ordinary carelessness or ordinary negligence, which frankly, [the court does not] even see that. But [the court] clearly find[s] that the facts do not substantiate willful misconduct or gross negligence.
>
> [The court] agree[s] … that the provisions of Section 7114 of the [MHPA] are applicable and do provide immunity from civil and criminal liability for both of the named defendants in this case.

N.T., 1/3/20, at 14-18, 21.

Thus, the trial court determined that the allegations of the Complaint, taken as true, do not overcome the immunity afforded by the MHPA. See id. Upon review, we agree with the sound reasoning of the trial court, as set forth above, and affirm on this basis with regard to Weimer's first and second claims. See id.

In his third claim, Weimer argues that the trial court improperly dismissed his punitive damages claim with prejudice. Brief for Appellant at 11. Weimer argues that "punitive damages may be awarded upon a finding of incompetence on the part of Dr. Tsao in so recklessly and erroneously interpreting the statements of the police officers." Id. at 12. According to Weimer, the plain language of section 4603 makes clear that "a cause of action

- 10 -

for incompetence, independent of gross negligence[,] can overcome section 4603 immunity." Id.

As set forth above, the immunity provisions of the MHPA precluded causes of action against Defendants for false imprisonment and malpractice. "It is axiomatic ... that a claim for punitive damages arises out of the underlying cause of action and, therefore, absent a viable cause of action, an independent claim for damages cannot stand." Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989). Consequently, the dismissal of Weimer's underlying causes of action precluded his claim for punitive damages. See id.

Notwithstanding, Weimer's claim for punitive damages is not supported by Pennsylvania law. Pursuant to Section 505 of the Medical Care Availability and Reduction of Error Act, 40 P.S. § 1303.505, punitive damages may only be awarded against a medical provider as follows:

> (a) AWARD.—Punitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the health care provider's act, the nature and extent of the harm to the patient that the health care provider caused or intended to cause and the wealth of the health care provider.
>
> (b) GROSS NEGLIGENCE.—A showing of gross negligence is insufficient to support an award of punitive damages.
>
> (c) VICARIOUS LIABILITY.— Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party

- 11 -

knew of and allowed the conduct by its agent that resulted in the award of punitive damages.

40 P.S. § 1303.505. As this Court has explained,

[p]unitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

Dubose v. Quinlan, 125 A.3d 1231, 1240 (Pa. Super. 2015) (citation omitted).

As the trial court stated above, "the facts do not substantiate willful misconduct or gross negligence." N.T., 1/3/20, at 21. Further, our review shows no evidence of conduct of an outrageous nature demonstrating an evil motive or reckless indifference to the rights of others. See Dubose, 125 A.3d at 1240. Even if Weimer's punitive damages claim could stand independent of his claims of medical malpractice and false imprisonment, we would find no error in the trial court's dismissal of Weimer's Complaint. Accordingly, we affirm the Order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2020